24106

SOUTH CAROLINA PROPERTY AND CASUALTY INSURANCE GUARANTY ASSOCIATION, Respondent v. CAROLINAS ROOFING AND SHEET METAL CONTRACTORS SELF-INSURANCE FUND, Hosea Foster, and Cannon Roofing Company, Defendants, Of which Carolina Roofing and Sheet Metal Contractors Self-Insurance Fund is Appellant.

(446 S.E. (2d) 422)

Supreme Court

*Janet L. Carter* and *Robert P. Wood,* both of *Sherrill and Rogers,* Columbia, *for appellant.*

*Linda S. Wolhbruck* of *Nelson, Mullins, Riley & Scarborough,* Columbia, and *Richard B. Watson* of *Nelson, Mullins, Riley & Scarborough,* Charleston, *for respondent.*

*E. Ross Huff, Jr.* and *Samuel F. Painter*, both of *Nexsen, Pruet, Jacobs & Pollard,* Columbia, *amicus curiae for S.C. Self-Insurers Ass'n. Inc.*

Heard Apr. 7, 1994.

Decided June 20, 1994.

FINNEY, Justice:

Appellant (Roofers Fund) is a group self-insurer under the Workers' Compensation Act which purchased catastrophic insurance from Mission Insurance Company. Mission became insolvent, and Roofers Fund submitted a claim to respondent (Guaranty Association). The Guaranty Association rejected the Roofers Fund claim, and then brought this declaratory judgment action to determine whether it was obligated to cover it. The circuit court held the claim was not covered, and that contrary to the Roofers Fund's position, the Guaranty Association was not estopped to deny coverage. We affirm.

## I. *FACTS*

Under S.C. Code Ann. § 42-5-20 (1985), the Workers' Compensation Commission is authorized to "permit two or more employers in businesses of a similar nature to enter into agreements to pool their liabilities under the Workers' Compensation Law for the purpose of qualifying as self-insurers." The Roofers Fund, composed of roofers located in North and South Carolina, operates under this provision.

The members of the group contribute an individual annual assessment to the Roofers Fund. Part of the assessment goes to administrative costs, and the rest into a fund to cover members' employees' claims. The Roofers Fund employs a third-party administrator, the Fred S. James Co.,[1] to do the actual claims work. If funds remain after payment of administrative costs and annual claims, then those remaining funds are distributed pro rata to members of the Roofers Fund whose employee claims were less than their annual assessments. Thus, in order to get a refund, both the Roofers Fund and the individual employer must have a good year. The Roofers Fund requires its members to sign a joint and several liability provision requiring all members to contribute additional monies if

---

[1] Now known as Sedgewick James.

the annual assessments do not generate enough funds to pay the claims for that year. Certain reserves are maintained by the Roofers Fund, although it does not have any capital in the traditional sense.

For the 1984-1985 policy year the Roofers Fund purchased catastrophic coverage from Mission. Under this policy, Mission agreed to cover any individual employee claim which exceeded $100,000 (the specific retention), and to cover all claims after the Roofers Fund had paid $900,000 (the aggregate retention). The retentions are essentially large deductibles. If a claim or claims exceeded the retention, then the policy provided for the Roofers Fund to pay the claim and to be reimbursed (indemnified) by Mission. During this policy year, one of the Roofers Fund members' employees (Foster) suffered a serious on-the-job injury which rendered him a paraplegic. The resulting claim exceeded the Mission policy's specific retention. Since Mission was insolvent, Roofers Fund sought payment from the Guaranty Association.

The Guaranty Association was created by the "South Carolina Property and Casualty Insurance Guaranty Association Act" (the Act) which is presently codified at S.C. Code Ann. §§ 38-31-10 et seq. (1989).[2] The Guaranty Association is a nonprofit organization composed of persons who are licensed to transact insurance by the Insurance Department and who write certain types of insurance in South Carolina. §§ 38-31-20(8) and 38-31-30. Its purpose is to provide some protection to insureds whose insurance companies become insolvent. Mission was a member of the Guaranty Association.[3]

The Act does not apply to reinsurance contracts, but only to direct insurance. § 38-31-30. The circuit court found the Mission policy was reinsurance, not direct insurance, and therefore the Roofers Fund could not recover from the Guaranty Association. Even if the policy is direct insurance, the Act applies only to a "covered claim." § 38-31-20(6). Amounts due an "insurer" are not a "covered claim." *Id.* The circuit court found the Roofers Fund was an "insurer" and therefore not entitle to recover under the Act. Finally, the circuit court held

---

[2] At the time this claim arose, the Act was found at §§ 38-19-10 et seq. There are no relevant differences between the current and prior statutes and we will refer to the present codification in this opinion.

[3] The Roofers Fund was not eligible for membership.

it would be unfair to allow a self-insurer to recover under the Act. The Roofers Fund argues public policy demands it be covered. We find the insurer issue dispositive and affirm.

## II. *IS THE ROOFERS FUND AN INSURER?*

The statute authorizing group self-insurers such as the Roofers Fund specifically provides they are subject to the "exclusive jurisdiction" of the Workers Compensation Commission and ". . . shall not be deemed to be *insurance companies* and shall not be regulated by the Department of Insurance." § 42-5-20 (emphasis added). The Guaranty Act does not exclude claims made by an insurance company, but rather those made by an insurer. § 38-31-20(6). Thus, the issue is whether the Roofers Fund is an insurer under the Act. We agree with the circuit court's finding that the Roofers Fund is an insurer.

■ While the Guaranty Act itself does not define insurer, that term is defined under Title 38, "The Insurance Law," to include:

> . . . any corporation, fraternal organization, burial association, other association, partnership, society, order, individual, or aggregation of individuals engaging or proposing or attempting to engage as principals in any kind of insurance or surety business, including the exchanging of reciprocal or interinsurance contracts between individuals, partnerships, and corporations.

S.C. Code Ann. § 38-1-20(25) (Supp. 1993). South Carolina defines insurance as "a contract whereby one undertakes to indemnify another or pay a specific amount upon determinable contingencies. . . ." § 38-1-20(19) (Supp. 1993). Both the arrangement between the Roofers Fund and its members, and between the Roofers Fund and Mission, meet this statutory definition of insurance. Thus, under the Insurance Law's definitions, it appears the Roofers Fund is an insurer since it is an "association . . . engaging in [a] kind of insurance . . . business. . . ."

This Court has never been asked whether a group self-insurer such as the Roofers Fund is an insurer. In a different context, we have noted that while single automobile self-insurers are not technically insurers, the service they provide is

insurance. *Wright v. Smallwood,* — S.C. —, 419 S.E. (2d) 219 (1992); *Southern Home Ins. Co. v. Burdette's Leasing Service, Inc.,* 268 S.C. 472, 234 S.E. (2d) 870 (1977); *see also SCE&G v. Jeter,* 288 S.C. 432, 343 S.E. (2d) 47 (Ct. App. 1987); *cf., Wake County Hosp. System, Inc. v. Nat'l Casualty Co.,* 804 F. Supp. 768 (E.D.N.C. 1992) (noting South Carolina is among a minority of jurisdictions holding self-insurance is insurance); *but see Collins Cadillac, Inc. v. Bigelow-Sanford, Inc.,* 276 S.C. 465, 279 S.E. (2d) 611 (1981) ("Bigelow, as a self-insurer held a dual role of *insured* and *insurer.* . . ."). In none of these cases, however, were we asked to decide whether the individual self-insurer met the statutory definition of insurer.

A single-employer self-insured merely retains its own risk that an event will occur which will render it liable. *See Zinke-Smith, Inc. v. Florida Ins. Guaranty Ass'n,* 304 So. (2d) 507 (Fla. App. 4th Dist. 1974) *reh. denied* 315 So. (2d) 469 (Fla. 1975). Since insurance traditionally involves a transfer of risk from one entity to another, it is conceptually difficult to consider a single-employer self-insured an insurer. In contrast, the members of a group self-insurer such as Roofers Fund *transfer* a portion of their risk to the group, and in turn *assume* a risk that belongs to the other members of the group.

At the circuit court hearing all parties agreed there was some risk transferred from its members to the Roofers Fund, but the expert witnesses disagreed whether the amount of risk transferred was sufficient to characterize the relationship as insurance. The trial judge found the Guaranty Association's experts' opinions more credible and found there was a substantial transfer of risk. Since this finding is supported by the evidence, we affirm it. *Noisette v. Ismail,* 299 S.C. 243, 384 S.E. (2d) 310 (Ct. App. 1989) ("Unless the cause of action and relief sought in a declaratory judgment action are distinctly equitable, the action will be considered one at law.") *rev'd in part on other grounds* 304 S.C. 56, 403 S.E. (2d) 122 (1991). Further, our statutory definition of insurance does not even reference risk transference, but instead requires a contractual agreement to pay or indemnify another.

We hold that since the Roofers Fund engages in a "kind of insurance," it is an insurer under § 38-1-20(25) and therefore its claim is not covered by the Act. § 38-31-20(6). We recognize

that other jurisdictions have found coverage under their version of the guaranty act for self-insurers, but find each of those cases distinguishable. *See Zinke-Smith, Inc., supra* (single-employer self-insurer and narrow statutory definition of insurer); *In re Mission Ins. Co.,* 112 N.M. 433, 816 P. (2d) 502 (1991) (single-employer self-insurer and statutory definitions of insurance and insurer); and *Stamp v. Department of Labor and Industries,* 122 Wash. (2d) 536, 859 P. (2d) 597 (1993) (single-employer self-insurer and analogy to automobile self-insurer liability case law holding coverage is not insurance).

The decision in *Iowa Contractors Workers Comp. Trust Group v. Iowa Ins. Co.,* 437 N.W. (2d) 909 (Iowa 1989) is factually similar to this case since it involves a group worker's compensation self-insurer, but it, too, is legally distinguishable. Most importantly, the Iowa Guaranty Act's own definition of insurer excludes self-insurers. While this fact alone sufficiently distinguishes that decision, there are other distinguishing factors as well. The Iowa court found insufficient risk transference to characterize the group's plan as insurance. *Iowa Contractors, supra.* Here, however, there is a finding of such transference and evidence in the record to support it. Further, as noted above, our statutory definition of insurance does not require a transfer of risk. The Iowa court also found that since Iowa's act specifically excluded the self-insured portion of any claim, it impliedly included any unself-insured portion. *Id.* South Carolina's Act has no comparable provision. We recognize that certain other factors relied upon by Iowa are equally applicable here, but find them unpersuasive, especially given the different versions of the Guaranty Act enacted by Iowa and South Carolina.

### III. *IS THE GUARANTY ASSOCIATION ESTOPPED TO DENY THE FOSTER CLAIM?*

The Roofers Fund argues the Guaranty Association is estopped to deny partial payment of the Foster claim. The circuit court found no estoppel. We affirm.

In the spring of 1985 it became apparent to the James Co. that Mission Insurance Company was in financial trouble. In June 1985, Foster suffered the serious work-related injury which left him a paraplegic. It was readily apparent that Fos-

ter's claim would exceed the specific retention ($100,000) of the Roofers Fund's Mission policy. A James Co. employee, anticipating Mission's insolvency, contacted an attorney seeking an opinion whether the Guaranty Association would cover such a claim. The attorney advised that problems could be anticipated. Mission was declared insolvent in October 1985.

The Foster claim was first brought to the Guaranty Association's attention in May 1987. In earlier communications, the Roofers Fund, through the James Co., had been told that the Guaranty Association was acting under a reservation of rights, and the Roofers Fund was subsequently reminded that only "covered claims" would be paid. The Roofers Fund delayed responding to the Guaranty Association's repeated requests for more information on the Foster claim.

In December 1987 the Roofers Fund reached a settlement agreement in the Foster case to "clincher" this paraplegic claim. The Guaranty Association expressed its concerns with the legality of a clincher in this type of case[4] and the Roofers Fund did not pursue it at that time. In May 1988 the Roofers Fund finally supplied the Guaranty Association with the information it had sought for a year. The Guaranty Association promptly notified the James Co. that it was rejecting the Foster claim, and the James Co. then wrote the Roofers Fund a letter which read in part "*As we suspected,* the South Carolina Guaranty Fund has denied our claim for recovery from them at this time. . . ." (Emphasis added.) The Foster claim subsequently settled for an amount in excess of that which would have been required to settle it in December 1987.

The Roofers Fund claims the Guaranty Fund's actions in questioning the December 1987 settlement estops it from denying coverage on the Foster claim to the extent the final settlement cost it more than the December 1987 settlement would have. We disagree.

The essential elements of equitable estoppel are:

(1) ignorance of the party invoking the doctrine of the true facts;
(2) misleading representations or conduct by the party sought to be estopped;
(3) reliance upon the representation or conduct; and

---

[4] The legality of a clincher in a paraplegic case is not before the Court.

(4) a prejudicial change of position as a result of such reliance.

*Standard Fire Ins. Co. v. Marine Contracting and Towing Co.,* 301 S.C. 418, 392 S.E. (2d) 460 (1990).

Like the circuit court, we find the Roofers Fund cannot establish these elements, especially since it repeatedly failed to disclose the relevant facts within its exclusive control to the Guaranty Association. Further, any contention that the Roofers Fund was relying on the Guaranty Fund to cover the Foster claim is negated by its legal inquiry in 1985, and by its admission that upon supplying the Guaranty Association with the requested documentation, the Foster claim was denied "as we suspected" it would be. The circuit court's findings that the Guaranty Association is not estopped, and that the Foster claim is not a covered claim under the Guaranty Act are

Affirmed.

CHANDLER, Acting C.J., TOAL and MOORE, JJ., and WILLIAM L. HOWARD, Acting Associate Justice, concur.