754 S.E.2d 486

Frances S. HUDSON, Deceased Employee, by Kenneth L. HUD-
SON and Keith B. Hudson, Co–Executors of her Estate, as well
as Matthew Deese and/or Andrew Deese, of whom Kenneth L.
Hudson and Keith B. Hudson are Petitioners/Respondents,

v.

LANCASTER CONVALESCENT CENTER, Employer, and Le-
gion Insurance Company, In Liquidation through the South
Carolina Property and Casualty Insurance Guaranty Associa-
tion, Carrier, Respondents/Petitioners.

Appellate Case No. 2011–194189.

No. 27348.

Supreme Court of South Carolina.

Heard Sept. 19, 2013.
Decided Jan. 8, 2014.
Rehearing Denied March 6, 2014.

114

Andrew N. Safran, of Andrew N. Safran, LLC, of Columbia, for Petitioners/Respondents.

E. Ross Huff, Jr. and Shelby H. Kellahan, both of Huff Law Firm, LLC, of Irmo, and Mark D. Cauthen and Temus C. Miles, Jr., both of Mckay, Cauthen, Settana & Stubley, P.A., of Columbia, all for Respondents/ Petitioners.

Justice PLEICONES.

This case concerns a workers' compensation lump-sum award to a claimant who passed away while an appeal of her award was pending. This Court granted certiorari to review a Court of Appeals opinion that refused to reach Respondents/Petitioners' argument that the award abated upon the beneficiary's death; granted the entire lump-sum award to beneficiary's dependent grandsons; reversed the grant of interest on the award; and affirmed the reinstatement of a ten-percent penalty. *Hudson v. Lancaster Convalescent Center,* 393 S.C. 1, 709 S.E.2d 65 (Ct.App.2011). We affirm in part, reverse in part and remand.

## FACTS

This case comes to the Court after multiple workers compensation hearings/appeals spanning more than 11 years. In 1997, Frances S. Hudson suffered a leg injury while in the scope of her employment with Lancaster Convalescent Center (Employer) for which it and its insurance carrier Legion accepted liability. Thereafter, in an October 2001 order, a single commissioner found Mrs. Hudson permanently disabled and unable to perform any kind of work due to a combination of injuries arising from her 1997 work related injury.

Afterward, Mrs. Hudson requested, over the objection of Employer and Legion, a lump-sum payment of her disability award. After a hearing, a single commissioner issued an order granting Mrs. Hudson's lump-sum request. Employer

and Legion appealed this lump-sum award to the Appellate Panel of the South Carolina Workers' Compensation Commission (Appellate Panel). During the pendency of this appeal, Mrs. Hudson passed away from cancer unrelated to her workplace injury. The Appellate Panel affirmed all of the single commissioner's findings of fact and conclusions of law.

Following affirmance of the lump-sum award, Legion and Employer appealed to the circuit court. While this appeal was pending, Legion became insolvent. As a result, the South Carolina Property and Casualty Insurance Guaranty Association (Guaranty) assumed all rights, duties and obligations of Legion pursuant to S.C.Code Ann. § 38–31–60 (2001).

Guaranty and Employer appealed to circuit court, arguing that it was error to grant Mrs. Hudson's award in lump-sum, and, that in light of Mrs. Hudson's death, the entire award must abate. The appeal was heard by the Honorable Paul E. Short, who affirmed the Appellate Panel's order in its entirety. Judge Short found that the lump-sum award was proper and supported by substantial evidence. Concerning Employer's and Guaranty's argument that the lump-sum award abated upon Mrs. Hudson's death, Judge Short found the issue was not preserved for review. However, the court went on to find that even if the argument were properly before the court, the award would survive Mrs. Hudson's death.

Guaranty and Employer appealed Judge Short's order to the Court of Appeals but voluntarily withdrew their appeal. As a result, the appeal was dismissed and the remittitur was sent on April 20, 2004.

During the above appeals, Employer and Guaranty stopped making payments after Mrs. Hudson's death. After Employer and Guaranty voluntarily dismissed their appeal to the Court of Appeals, Petitioner/Respondents, Kenneth and Keith Hudson, as executors and sole beneficiaries of their mother's estate (the Estate), initiated this action against Employer and Guaranty, seeking enforcement of the lump-sum award.

A dependency hearing was held to determine entitlement to the lump-sum award.[1] Despite Judge Short's rulings and the

---

1. At the hearing, the potential beneficiaries' included Kenneth and Keith Hudson, as well as Andrew Dees and Mathew Pope, hereinafter

voluntary dismissal of their appeal to the Court of Appeals, Employer and Guaranty maintained they were not required to pay the lump-sum award because it abated upon Mrs. Hudson's death. The single commissioner found Judge Short's unappealed 2004 order, which found the abatement argument unpreserved, was the law of the case and could not be challenged or relitigated.

As to potential beneficiaries, the single commissioner found that all four beneficiaries had colorable claims to the lump-sum award, and approved a settlement that had been entered into between the Estate and Grandsons under S.C.Code Ann. § 42–9–390 (1976). The settlement divided the award fifty-percent to the Estate and fifty-percent to the Grandsons. Additionally, the single commissioner imposed interest on the award and a ten-percent penalty against Guaranty.

Employer and Guaranty appealed to the Appellate Panel, which affirmed all of the single commissioner's factual findings and conclusions of law with the exception of the ten-percent penalty. Specifically, the Appellate Panel noted that Guaranty and Legion "did not pursue a frivolous defense," and therefore concluded that no penalty should be imposed.

Thereafter, the Estate, Employer, and Guaranty cross-appealed to the circuit court. The Honorable Kenneth E. Goode heard the appeal and issued an order affirming the Appellate Panel with the exception of the ten-percent penalty. Judge Goode reinstated the ten-percent penalty finding that S.C.Code Ann. § 42–9–90 (1976) mandated a penalty in this case.

Employer and Guaranty appealed. The Court of Appeals refused to address their argument that the award abated, holding that Judge Short's ruling was the law of the case. Additionally, the Court of Appeals affirmed the circuit court's imposition of the ten-percent penalty, but reversed the imposition of interest on the lump-sum award. It concluded that under S.C.Code Ann. § 38–31–60 (2001), Guaranty was only liable for "covered claims" which do not include claims for interest. Additionally, the Court of Appeals reversed the Judge Goode's ruling upholding the settlement which divided

Grandsons. Both Grandsons were found to be dependent, to some extent, upon Mrs. Hudson for support.

half of the lump-sum award to the Estate and half to the Grandsons.

Thereafter, this Court granted Employer's, Guaranty's, and Estate's petitions for writ of certiorari.

## ISSUES

I. Does the law of the case doctrine prevent the Court from reaching the merits of Respondents/Petitioners' argument that the lump-sum award abated upon Mrs. Hudson's death?

II. Does S.C.Code Ann. § 42–9–280 (1976) require that the settlement approved by the Commission be set aside, and the entire lump-sum award be distributed to Mrs. Hudson's dependent grandsons as her "next of kin dependents?"

III. Is an assessment of interest on this award appropriate?

IV. Is imposition of a ten-percent penalty under S.C.Code Ann. § 42–9–90 (1976) appropriate?

## DISCUSSION

### I. Abatement

■ Employer and Guaranty contend that the Court of Appeals erred by not reaching the merits of their abatement argument because Judge Short's ruling should not have been the law of the case. We disagree.

■ Judge Short's 2004 order found the abatement issue unpreserved because Employer and Guaranty failed to raise it to the Appellate Panel. Employer and Guaranty appealed this order but later withdrew their appeal. Under the law of the case doctrine, a party is precluded from re-litigating issues decided in a lower court order, when the party voluntarily abandons its appeal of that order. *Judy v. Martin*, 381 S.C. 455, 458, 674 S.E.2d 151, 153 (2009) (holding that Appellant may not seek relief from a prior unappealed order of the circuit court because the ruling has become the law of the case); *In re Morrison*, 321 S.C. 370 n. 2, 468 S.E.2d 651 n. 2 (1996) (noting that an unappealed ruling becomes the law of the case and precludes further consideration of the issue on

appeal); *Watkins v. Hodge,* 232 S.C. 245, 247–48, 101 S.E.2d 657, 658 (1958) (refusing to consider jurisdictional matter of underlying case where issue had been ruled upon and not challenged on appeal). Accordingly, we affirm the Court of Appeals' holding that Judge Short's ruling that the abatement issue was unpreserved is the law of the case.

## I. Distribution

██ The Court of Appeals found that pursuant to § 42–9–280 [2] all of the unpaid balance of the lump-sum award must be paid to Grandsons as her next of kin dependents. As a result, the Court of Appeals reversed the circuit court order that upheld the Appellate Panel's approval of the settlement between the Estate and Grandsons.[3] The Estate argues this was error. We agree.

Our courts have a long standing policy favoring settlements *See, Darden v. Witham,* 258 S.C. 380, 388, 188 S.E.2d 776, 778 (1972) ("The courts favor settlements and agreements amongst litigants"). This Court has recognized, "that litigants are free to devise a settlement agreement in any manner that does not contravene public policy or the law." *Poston v. Barnes,* 294 S.C. 261, 264, 363 S.E.2d 888, 890 (1987). Given that all potential beneficiaries agreed to the settlement, it was approved pursuant to the procedure in S.C.Code Ann. § 42–9–390, and nothing in § 42–9–280 prevents a potential beneficiary from structuring a settlement as to how their award will be distributed, we agree with the Estate that the Court of Appeals erred in reversing the circuit court order.

Furthermore, the only parties challenging this settlement are Guaranty and Employer, neither of whom were aggrieved in any way by the settlement agreement.[4] Therefore, they

---

2. Section 42–9–280 provides:

 When an employee receives or is entitled to compensation under this Title for an injury covered by the second paragraph of § 42–9–10 ... payment of the unpaid balance of compensation shall be made to his next of kin dependent upon him for support ...

3. Both Grandsons were represented by Guardians ad Litem who agreed with the Estate that to prevent a financial dispute within the family, the best disposition of this issue was to come to a settlement agreement.

4. During oral arguments, Guaranty and Employer conceded that they would not be harmed by this settlement.

could not properly appeal the circuit court order approving the settlement agreement. Rule 201 SCACR ("Only a party aggrieved by an order, judgment, sentence or decision may appeal.") The Court of Appeals erred in even addressing this issue much less reversing the circuit court on an issue raised by a non-aggrieved party. *Cisson v. McWhorter*, 255 S.C. 174, 178, 177 S.E.2d 603, 605 (1970) (noting that it is an appellate court's "duty to reject an appeal that is prosecuted by a party who is not aggrieved in a legal sense by the judgment of the trial court"). Thus, we reverse the Court of Appeals and reinstate the settlement.[5]

## III. Interest

■ Interest was imposed on the lump-sum award by the Appellate Panel under S.C.Code Ann. § 42–9–240 (1976), which provides:

> . . . [C]ompensation payable under the terms of an award by the Commission or . . . a judgment of a court upon an appeal . . . shall become due seven days from the date . . . of such a judgment of the court, on which date all compensation due shall be paid, including interest from the original date of the award at the maximum legal rate."

The circuit court upheld the imposition of interest. The Court of Appeals, however, reversed the grant of interest, explaining that Guaranty is only responsible for "covered claims" under S.C.Code Ann. § 38–31–60(b) (Supp.2009),[6] and S.C.Code Ann. § 38–31–20(8)(h) (Supp.2009) expressly provides that "covered claim . . . does not include . . . (h) any claims of interest." The Estate argues this was error, and we agree.

---

5. In light of our disposition of this issue, we need not address the Estate's or Guaranty's arguments regarding the applicability of § 42–9–280 to this lump-sum award. *Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) ("In light of our disposition of the case, it is not necessary to address [the] remaining issues").

6. Section 38–31–60(b) provides in relevant part that the Guaranty Association ". . . is considered the insurer to the extent of its obligation on the covered claims . . ."

The Estate contends that while Guaranty's derivative liability for Legion's action is limited to "covered claims", its direct liability for its own misconduct is not. Thus, the imposition of interest is proper due to Guaranty's direct liability arising from its failure to timely pay the lump-sum award.

To address this argument we must examine two issues. First, whether Guaranty may be held directly liable for its own conduct, and second, if Guaranty may be held directly liable, is this liability limited to "covered claims?"

The Estate supports its argument that Guaranty may be held directly liable by citing to the "may sue or be sued" language in S.C.Code Ann. § 38–31–60(j) (1976), which provides:

> [Guaranty] may sue or be sued provided, however, that any action brought directly against the association must be brought against the association in the State of South Carolina as a condition precedent to recovery directly against the association.

 The cardinal rule of statutory construction is to ascertain and effectuate the intent of the legislature. *Charleston County Sch. Dist. v. State Budget and Control Bd.*, 313 S.C. 1, 437 S.E.2d 6 (1993). "What a legislature says in the text of a statute is considered the best evidence of the legislative intent or will. Therefore, the courts are bound to give effect to the expressed intent of the legislature." *Hodges v. Rainey*, 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000) (citing Norman J. Singer, *Sutherland Statutory Construction* § 46.03 at 94 (5th ed. 1992)). Under the plain meaning rule, it is not the court's place to change the meaning of a clear and unambiguous statute. *In re Vincent J.*, 333 S.C. 233, 509 S.E.2d 261 (1998) (citations omitted). When a statute's language is plain and unambiguous, and conveys a clear and definite meaning, the rules of statutory interpretation are not needed, and this court has no right to impose another meaning. *Catawba Indian Tribe of South Carolina v. State*, 372 S.C. 519, 525, 642 S.E.2d 751, 754 (2007).

The "may sue or be sued" language of § 38–31–60(j) is clear indication of the legislature's intent for Guaranty to both enforce its own direct claims, and be held directly liable for its

own actions. Thus, we hold that Guaranty may be held directly liable for its own actions.

█ We note Guaranty contends that even if interest could be imposed, no direct action has been brought against Guaranty; thus, the prerequisite to hold Guaranty directly liable under § 38–31–60(j) has not been satisfied.

We agree that the language, "... provided, however, that any action brought directly against the association must be brought against the association in the State of South Carolina as a condition precedent to recovery directly against the association" of § 38–31–60(j), requires that a direct action be brought against the Guaranty before one can recover directly against it. However, we disagree with the assertion that no direct action has been brought against Guaranty.

After the Court of Appeals ordered the dismissal and remittitur of Employer's and the Guaranty's first round of appeals, a dependency hearing was held. The only parties at the hearing were Employer, Guaranty, the Estate, and the Grandsons. This dependency hearing served multiple purposes. Along with determining dependency, the Estate was seeking to enforce the prior orders requiring that Mrs. Hudson's lump-sum be paid, as well as sanctions against Employer and Guaranty.[7] Since this is a workers' compensation case, the Commission was the only appropriate forum through which the Estate could attempt to enforce these orders against Guaranty. *Posey v. Proper Mold & Engineering, Inc.*, 378 S.C. 210, 223, 661 S.E.2d 395, 401 (2008) ("The General Assembly has vested the South Carolina Workers' Compensation Commission with exclusive original jurisdiction over employees work-related injuries") (citing *Sabb v. South Carolina State University*, 350 S.C. 416, 423, 567 S.E.2d 231, 234 (2002)). At this hearing, Guaranty was present as a result of its own refusal to pay the lump-sum award not through the derivative liability of an insolvent insurer. We hold that this satisfies the direct action prerequisite present in § 42–9–240. Therefore, we must determine if the "covered claims" claims limitation applies to Guaranty's direct liability.

---

7. The Estate and Grandsons also requested that the lump-sum award be distributed pursuant to their settlement.

 Guaranty is a last resort insurer created by the legislature to protect consumers in the event that their insurer becomes insolvent. *See* § 38–31–60; *South Carolina Property and Cas. Ins. Guar. Ass'n v. Carolinas Roofing and Sheet Metal Contractors Self-Insurance Fund,* 315 S.C. 555, 557, 446 S.E.2d 422, 424 (1994)("[Guaranty's] purpose is to provide some protection to insureds whose insurance companies become insolvent"). Section 38–31–60(b) provides that Guaranty "is considered the insurer to the extent of its obligation on the covered claims and, to this extent, has all rights, duties, and obligations of the insolvent insurer as if the insurer had not become insolvent. . . ." When Guaranty steps into the shoes of an insolvent insurer, its liability is derivative of the insolvent insurance company's direct liability to the consumer. The legislature has limited this liability to a "covered claim" which is defined by § 38–31–20(8) as ". . . an unpaid claim . . . which arises out of . . . an insurance policy to which this chapter applies issued by an insurer, if the insurer is an insolvent insurer . . . covered claim does not include: . . . (h) any claim for interest."

The legislature has chosen to define a "covered claim" as a claim arising from an insolvent insurer, yet Guaranty asks this Court to read the "covered claims" and its corresponding interest limitation to apply to claims arising from Guaranty's own actions. We decline to do so.

 The legislature has provided that Guaranty may be held directly liable for its own actions in § 38–31–60(j), yet there is no such "covered claims" limitation for Guaranty's direct liability. Nor is there any reference to Guaranty's direct liability in the definition of "covered claims." It is axiomatic that "words in a statute must be construed in context," and "the meaning of particular terms in a statute may be ascertained by reference to words associated with them in the statute." *Eagle Container Co., LLC v. County of Newberry,* 379 S.C. 564, 570, 666 S.E.2d 892, 895 (2008) (citing *Mut. Church Ins. Co. v. S.C. Windstorm & Hail Underwriting Ass'n,* 306 S.C. 339, 342, 412 S.E.2d 377, 379 (1991)). Further, statutes must be read as a whole and sections which are part of the same general statutory scheme must be construed

together and each given effect, if it can be done by any reasonable construction. *Higgins v. State*, 307 S.C. 446, 415 S.E.2d 799 (1992).

 Reading both the covered claims and direct liability statutes together, § 38–31–20(8), cannot be construed as limiting a claim arising from Guaranty's own action. Thus, we hold that the "covered claim" limitation, applies only in the context of claims deriving from insolvent insurance carrier's policies, and hold that when a claim is brought directly against Guaranty, it will not be limited to "covered claims."

Accordingly, we find that interest may be assessed against Guaranty, when liability results from Guaranty's own actions. In this case, after the first round of appeals were abandoned, liability for this lump-sum award was conclusively established. Guaranty's subsequent failure to timely pay this lump-sum award can only be attributed to its own conduct. Therefore, a claim for interest under § 42–9–240 is appropriate in this case because Guaranty's liability for the accrued interest does not arise from a "covered claim."

Accordingly, we hold that an imposition of interest is appropriate in this case. We note that § 42–9–240 allows for interest to accrue from the date of the original judgment. However, as stated above, interest is only appropriate for Guaranty when associated with direct liability. As a result, the Guaranty will only be responsible for interest from the date that this lump-sum award became final, which under the statute is April 27, 2004, seven days from the date of the order of remittitur from the Court of Appeals.[8] *See* § 42–9–240 ("an award by the Commission or under the terms of a judgment of a court upon an appeal from such an award shall become due seven days from the date of such an award or from the date of such a judgment of the court.") Consequently, we reverse the Court of Appeal's holding that interest is inappropriate in this case and hold that Guaranty is responsible for interest on this lump-sum award at the "maximum legal rate" accruing from

---

8. The Court of Appeal's order of dismissal and remittitur was issued on April 20, 2004.

April 27, 2004. We therefore remand the matter to the Commission for calculation of the interest due on the lump-sum award.

## IV. Penalty

 Finally, Guaranty contends that the Court of Appeals erred in affirming Judge Goode's order construing § 42–9–90 as requiring a mandatory penalty.[9] Guaranty presents two arguments to support its contention: (1) the circuit court exceeded its scope of review by making his own factual findings to impose the penalty; and (2) the circuit court erred in reversing the Appellate Panel because Guaranty was excused from payment due to the uncertainty of who was entitled to this lump-sum award. We disagree on both points.

First, the circuit court did not make any improper factual findings. The circuit court merely applied § 42–9–90 to the Appellate Panel's factual findings and found the statute mandated a penalty in this case.

Second, we agree with the Court of Appeals and the circuit court that the Appellate Panel abused its discretion in declining to impose a penalty.

Section 42–9–90 provides:

> ... if any installment of compensation ... is not paid within fourteen days after it is due, ... there shall be added to such unpaid installment an amount equal to ten per cent thereof, which shall be paid ... unless such nonpayment is excused by the Commission after a showing by the employer that owing to conditions over which he had no control such installment could not be paid within the period prescribed for the payment.

---

9. The ten-percent penalty was first imposed by the single commissioner at the dependency hearing. On appeal the Appellate Panel reversed, stating that the penalty should not be assessed because the Guaranty Association and Employer "did not pursue a frivolous defense." The penalty was reinstated by Judge Goode, which held that § 42–9–90 mandates the penalty any time compensation is not paid within fourteen days of becoming due, citing *Martin v. Rapid Plumbing* 369 S.C. 278, 631 S.E.2d 547 (Ct.App.2006).

Section 42–9–90, permits excusal of this penalty only **after** there is a showing of circumstances beyond the employer's control excusing non-payment. Applying § 42–9–90, the Appellate Panel stated "no penalties should be assessed, as Defendant's did not pursue a frivolous defense." This is the only finding or analysis in the order justifying excusal of the penalty. Under § 42–9–90, a demonstration of a non-frivolous defense does not excuse imposition of this penalty. Only a showing of circumstances beyond Guaranty's control preventing them from timely paying this award would excuse this penalty. From the Appellate Panels finding there is no indication of circumstances beyond Guaranty's control which prevented it from paying. Thus, Appellate Panel abused its discretion in declining to apply this penalty. Therefore, we affirm the Court of Appeal's decision to uphold the circuit court's ruling that the Appellate Panel abused its discretion in removing the ten-percent penalty. 10

### V. Conclusion

We affirm the Court of Appeals' decision that Judge Short's order was the law of the case on the abatement issue. We also affirm the Court of Appeals holding that the ten-percent penalty should be imposed in this case. We reverse the Court of Appeals decision requiring the entire lump-sum award be paid to the Grandsons, and reinstate the Estate's and Grandsons' settlement. We also reverse the Court of Appeals decision to remove the assessment of interest, and hold that Guaranty is responsible for interest running from April 27, 2004. Finally, we remand this case to the Commission to calculate the sums due pursuant to this opinion.

**AFFIRMED IN PART AND REVERSED IN PART AND REMANDED.**

TOAL, C.J., BEATTY, KITTREDGE and HEARN, JJ., concur.