Janette BUCHANAN and Shana Smallwood, Individually
and as Co-Personal Representatives of the Estate
of James S. Buchanan, Respondents,

v.

THE SOUTH CAROLINA PROPERTY AND
CASUALTY INSURANCE GUARANTY
ASSOCIATION, Appellant.

Appellate Case No. 2015-000246
Opinion No. 5424

Court of Appeals of South Carolina.

Heard May 4, 2016
Filed July 13, 2016
Rehearing Denied September 23, 2016

Howard A. Van Dine, III, Allen Mattison Bogan, Erik Tison Norton, and Tara C. Sullivan, all of Nelson Mullins Riley & Scarborough, LLP, of Columbia, for Appellant.

John S. Nichols, of Bluestein Nichols Thompson & Delgado, LLC, of Columbia; and Daniel W. Luginbill, of Wilson & Luginbill, LLC, of Bamberg, for Respondents.

LOCKEMY, C.J.:

In this declaratory judgment action, the South Carolina Property and Casualty Insurance Guaranty Association (the Association) appeals the trial court's order granting summary judgment in favor of Janette Buchanan and Shana Smallwood, individually and as co-personal representatives of the estate of James Buchanan (Respondents). On appeal, the Association argues the trial court erred in finding the Association's statutory offset of $376,622 should be deducted from the claimant's total amount of stipulated damages of $800,000 rather than the Association's mandatory statutory claim limit of $300,000. We affirm.

## FACTS/PROCEDURAL HISTORY

On January 7, 2008, James Buchanan was involved in a motor vehicle accident in Bamberg, South Carolina, caused by a vehicle driven by Eddie Best and owned by Travis Scott. Scott's vehicle was insured for one million dollars by AequiCap Insurance Company (AequiCap). Mr. Buchanan died at the scene of the accident.

Mrs. Buchanan, individually and as the personal representative of Mr. Buchanan's estate, initiated a wrongful death lawsuit in Bamberg County against Best and Scott, both of whom were South Carolina residents. During the pendency of the wrongful death action, a Florida court declared AequiCap insolvent. As a result of AequiCap's insolvency, the Association assumed management of the claims against AequiCap's South Carolina insureds pursuant to the South Carolina Property and Casualty Insurance Guaranty Association Act (the Act).[1]

Mrs. Buchanan, Scott, and Best reached a settlement in the wrongful death lawsuit, and the trial court approved the settlement on February 24, 2014. As part of the settlement agreement, the parties stipulated that Mrs. Buchanan sustained $800,000 in damages. Respondents recovered a total of

---

1. *See* S.C. Code Ann. §§ 38–31–10 through –170 (2015).

$376,622 from workers' compensation benefits and the code-fendants' insurance.

On April 11, 2013, Respondents filed an action against the Association for a declaration that the Association must pay $300,000, the limit of its exposure under S.C. Code Ann. § 38–31–60 (2015). Respondents asserted the balance due to them after offsetting their $376,622 recovery was $423,378, which exceeded the statutory limit. The Association answered, claiming the credit for the $376,622 already received should be applied to its $300,000 statutory cap, which would reduce its obligation to zero. The Association and Respondents filed cross-motions for summary judgment.

On May 28, 2014, the trial court held a hearing on the cross-motions. On September 9, 2014, the trial court granted Respondents' summary judgment motion and denied the Association's motion. In its order, the trial court found the plain language of the Act mandated that the Association pay Respondents $300,000. The trial court found Respondents' "covered claim" under the AequiCap policy was $800,000, to which an offset of $376,622 would be applied under section 38–31–100(1) of the South Carolina Code (2015), leaving a balance of $423,378 on the covered claim. The trial court held the Association's obligation to pay the balance due on the claim was then limited by the $300,000 cap set forth in section 38–31–60. The Association filed a motion for reconsideration, which the trial court denied. This appeal followed.

**STANDARD OF REVIEW**

 "Where cross motions for summary judgment are filed, the parties concede the issue before us should be decided as a matter of law." *Wiegand v. U.S. Auto. Ass'n*, 391 S.C. 159, 163, 705 S.E.2d 432, 434 (2011). "Determining the proper interpretation of a statute is a question of law, and this Court reviews questions of law de novo." *Lambries v. Saluda Cty. Council*, 409 S.C. 1, 7, 760 S.E.2d 785, 788 (2014) (quoting *Town of Summerville v. City of N. Charleston*, 378 S.C. 107, 110, 662 S.E.2d 40, 41 (2008)). "In a case raising a novel issue of law regarding the interpretation of a statute, the appellate court is free to decide the question with no particular deference to the lower court." *Id.* at 7–8, 760 S.E.2d at 788 (quoting *Sloan v. S.C. Bd. of Physical Therapy Exam'rs*, 370 S.C. 452,

466, 636 S.E.2d 598, 605 (2006)). "The appellate court is free to decide the question based on its assessment of which interpretation and reasoning would best comport with the law and public policies of this state and the Court's sense of law, justice, and right." *Id.* at 8, 760 S.E.2d at 788 (quoting *Sloan*, 370 S.C. at 467, 636 S.E.2d at 605–06).

## LAW/ANALYSIS

■ The Association argues the Act unambiguously requires that any offset be deducted from the Association's $300,000 statutory claim limit rather than a claimant's total amount of damages on a covered claim. We disagree.

"The cardinal rule of statutory construction is to ascertain and effectuate the intent of the legislature." *Hodges v. Rainey*, 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000). "Under the plain meaning rule, it is not the court's place to change the meaning of a clear and unambiguous statute." *Id.* "Where the statute's language is plain and unambiguous, and conveys a clear and definite meaning, the rules of statutory interpretation are not needed and the court has no right to impose another meaning." *Id.* "What a legislature says in the text of a statute is considered the best evidence of the legislative intent or will. Therefore, the courts are bound to give effect to the expressed intent of the legislature." *Id.* (quoting Norman J. Singer, *Sutherland Statutory Construction* § 46.03 at 94 (5th ed. 1992)). "All rules of statutory construction are subservient to the one that legislative intent must prevail if it can be reasonably discovered in the language used, and that language must be construed in light of the intended purpose of the statute." *McClanahan v. Richland Cty. Council*, 350 S.C. 433, 438, 567 S.E.2d 240, 242 (2002).

■ "It is axiomatic that 'words in a statute must be construed in context,' and 'the meaning of particular terms in a statute may be ascertained by reference to words associated with them in the statute.'" *Hudson ex rel. Hudson v. Lancaster Convalescent Ctr.*, 407 S.C. 112, 124, 754 S.E.2d 486, 492 (2014) (quoting *Eagle Container Co., LLC v. Cty. of Newberry*, 379 S.C. 564, 570, 666 S.E.2d 892, 895 (2008)). "Further, statutes must be read as a whole and sections which are part of the same general statutory scheme must be construed

together and each given effect, if it can be done by any reasonable construction." *Id.* at 124–25, 754 S.E.2d at 492–93.

"[The Association] is a last resort insurer created by the legislature to protect consumers in the event that their insurer becomes insolvent." *Id.* at 124, 754 S.E.2d at 492. Section 38–31–60(b) states the Association "is considered the insurer to the extent of its obligation on the covered claims and, to this extent, has all rights, duties, and obligations of the insolvent insurer as if the insurer had not become insolvent." "Because [the Association] is a creature of statute, its duties, liabilities, and obligations are controlled by the terms and conditions set forth in the Act." *S.C. Prop. & Cas. Ins. Guar. Ass'n v. Brock*, 410 S.C. 361, 365–66, 764 S.E.2d 920, 922 (2014). "Pursuant to the Act, [the Association] must pay certain 'covered claims,' as the term is defined in section 38–31–20(8) [of the South Carolina Code (2015)]." *Id.* at 366, 764 S.E.2d at 922. A "covered claim" is "an unpaid claim . . . which arises out of and is within the coverage and is subject to the applicable limits of an insurance policy to which this chapter applies issued by an insurer, if the insurer is an insolvent insurer." § 38–31–20(8). However, the Association's obligation to pay covered claims "includes only the amount each covered claim is in excess of two hundred fifty dollars and is less than three hundred thousand dollars." S.C. Code Ann. § 38–31–60(a)(iv) (2015).

"As a condition precedent to recovery from [the Association], a claimant is required to first exhaust all available coverage from solvent insurers, and [the Association] is allowed to offset the full limits of such other coverage against its obligations under the Act." *Brock*, 410 S.C. at 366, 764 S.E.2d at 922. Regarding the exhaustion and offset of coverage from solvent insurers, section 38–31–100(1) provides as follows:

A person, having a claim under an insurance policy, whether or not it is a policy issued by a member insurer, and the claim under such other policy arises from the same facts, injury, or loss that gave rise to the covered claim against the association, is required to first exhaust all coverage and limits provided by any such policy. *Any amount payable on a covered claim under this chapter must be reduced by the full limits of such other coverage* as set forth on the declarations page and the association shall receive a full

credit for such limits, *or, where there are no applicable limits, the claim must be reduced by the total recovery.* Notwithstanding the foregoing, no person may be required to exhaust all coverage and limits under the policy of an insolvent insurer.

(emphases added).

▊▊▊ We find section 38–31–100(1) is unambiguous and the plain reading of section 38–31–100(1) requires that any recovery from solvent insurers be deducted from the total amount of the covered claim rather than from the Association's $300,000 statutory cap.

Before seeking compensation from the Association, Respondents exhausted the coverage available from solvent insurers, as required by section 38–31–100(1), by recovering $376,622 from workers' compensation benefits and the codefendants' other insurance policies. We find the trial court properly determined section 38–31–100(1) mandated that the $376,622 Respondents recovered from the solvent insurers be deducted from the $800,000 payable on the covered claim. *See* § 38–31–100(1) ("Any amount payable on a covered claim under this chapter must be reduced by the full limits of such other coverage, ... or, where there are no applicable limits, the claim must be reduced by the total recovery.").

We find the language "[a]ny amount payable on a covered claim under this chapter" in section 38–31–100(1) refers to the total amount of damages suffered under the covered claim. In addition, we find the phrase "[a]ny amount payable on a covered claim under this chapter" is not synonymous with "the Association's obligation on a covered claim"—which would be either the policy limits if the limits were less than or equal to $300,000, or a maximum of $300,000 if the policy limits exceeded $300,000. *See* § 38–31–60(b) (providing the Association "is considered the insurer to the extent of its obligation on the covered claims and, to this extent, has all rights, duties, and obligations of the insolvent insurer as if the insurer had not become insolvent"); § 38–31–60(a)(iv) (stating the Association's obligation to pay covered claims "includes only the amount each covered claim is in excess of two hundred fifty dollars and is less than three hundred thousand dollars"). In our view, if the legislature had intended the statutory cap to be reduced by the recovery, it could have drafted the statute

to read "the Association's *obligation* under this chapter must be reduced by the total recovery." However, instead, the legislature said that "the *claim* must be reduced by the total recovery." § 38–31–100(1) (emphasis added). We find our reading of section 38–31–100(1) is consistent with the Act's purpose of providing some protection for consumers whose insurers become insolvent. *See S.C. Prop. & Cas. Ins. Guar. Ass'n v. Carolinas Roofing & Sheet Metal Contractors Self–Ins. Fund*, 315 S.C. 555, 557, 446 S.E.2d 422, 424 (1994) ("[The Association's] purpose is to provide some protection to insureds whose insurance companies become insolvent.").

After offsetting the $376,622 recovery against the $800,000 covered claim, the remaining unpaid amount on the covered claim was $423,378, which was within the limits of Scott's one million dollar policy with AequiCap but exceeded the $300,000 statutory cap on the Association's obligation to pay. Section 38–31–60(a)(iv) required the Association to pay $300,000 of this outstanding amount. Accordingly, we hold the trial court properly applied the $376,622 offset to the $800,000 payable on the covered claim and did not err in ordering the Association to pay Respondents $300,000.

## CONCLUSION

Accordingly, the decision of the trial court is

**AFFIRMED.**

WILLIAMS and MCDONALD, JJ., concur.