JUSTICE KITTREDGE :
**545 We issued a writ of certiorari to review the court of appeals' decision affirming summary judgment in favor of Respondents Janette Buchanan and Shana Smallwood. Buchanan v. S.C. Prop. & Cas. Ins. Guar. Ass'n , 417 S.C. 562, 790 S.E.2d 783 (Ct. App. 2016). On certiorari, the South Carolina Property and Casualty Insurance Guaranty Association (the Guaranty) argues the court of appeals erred in construing the provisions of the South Carolina Property and Casualty Insurance Guaranty Association Act (the Act)[1] and affirming the trial court's finding that the Guaranty's statutory offset of $376,622 should be deducted from the claimant's total amount of stipulated damages of $800,000 rather than the Association's mandatory statutory claim limit of $300,000. We conclude the Act is ambiguous, and we further find the court of appeals correctly construed the Act to require that settlement amounts be offset from the total amount of an injured party's damages rather than from the $300,000 statutory cap. We therefore affirm the court of appeals' decision as modified.
I.
The underlying dispute arose following a deadly motor vehicle accident in Bamberg County on January 7, 2008. At the time of the accident, decedent James Buchanan was driving a tractor trailer traveling northbound on U.S. Highway 321. Heading southbound on U.S. Highway 321 were three vehicles-a logging truck followed by two tractor trailers, one driven by Willie Pelote and the other by his brother Roger Pelote, both of whom are former parties to this action. As the vehicles converged, a set of tandem tires came loose from the logging truck and struck Mr. Buchanan's vehicle, breaking the front axle. As a result, Mr. Buchanan's truck crossed the center line and struck the second tractor trailer. Mr. Buchanan's tractor trailer caught fire, and he died at the scene.
Thereafter, Respondents, as co-personal representatives of Mr. Buchanan's estate, filed a wrongful death claim against the driver of the logging truck; the owner of the logging truck;
**546 Strobel Tire Co., which performed tire maintenance work on the logging *126 truck shortly before the accident; and the Pelotes.[2]
The logging truck was insured by a policy with a limit of $1,000,000 issued by Aequicap Insurance Co. (Aequicap), which became insolvent during the pendency of the wrongful death action. As a result of Aequicap's insolvency, Respondents asserted their claims against the Guaranty.
Created by the Act, the Guaranty is a nonprofit, unincorporated association, of which all property and casualty insurers conducting business in South Carolina are members. S.C. Code Ann. § 38-31-40 (2015). The Guaranty's "purpose is to provide some protection to insureds whose insurance companies become insolvent." S.C. Prop. & Cas. Ins. Guar. Ass'n v. Carolinas Roofing & Sheet Metal Contractors Self-Ins. Fund , 315 S.C. 555, 557, 446 S.E.2d 422, 424 (1994).
When an insurer becomes insolvent, the Guaranty steps into the shoes of the insurer "to the extent of its obligation on the covered claims." S.C. Code Ann. § 38-31-60(b) ; see Hudson ex rel. Hudson v. Lancaster Convalescent Ctr. , 407 S.C. 112, 124, 754 S.E.2d 486, 492 (2014) ("When [the] Guaranty steps into the shoes of an insolvent insurer, its liability is derivative of the insolvent insurance company's direct liability to the consumer."). But by virtue of the Act, the Guaranty's obligation to pay is limited to $300,000 per claim.[3] Id . § 38-31-60(a)(iv).
Ultimately, the parties settled the wrongful death claim, stipulating the amount of damages to be $800,000. Thus far, Respondents have recovered a total of $376,622 from parties other than the Guaranty-$225,000 from the Pelotes' insurance carrier; $20,000 from Strobel Tire Co.; and $131,622 in workers' compensation death and funeral expenses.
The parties agree $376,622 is the set-off amount. The only disputed issue is what amount, if any, of the remaining $423,378 is within the Guaranty's statutory cap after setoff.
**547 Specifically, the question is whether the settlement amount is offset from the $800,000 of total damages or from the $300,000 statutory maximum obligation.
Respondents filed a declaratory judgment action seeking an order that the Guaranty is obligated to pay the full $300,000 amount of the statutory cap. The parties filed cross motions for summary judgment. Respondents argued that the $376,622 is offset from the $800,000 total, leaving $423,378 in unpaid damages, of which the Guaranty is responsible for only $300,000-the statutory cap. In contrast, the Guaranty argued the statutory cap is first applied to the overall claim, reducing it from $800,000 to $300,000; then, the $376,622 in settlements are offset, leaving the Guaranty liable for nothing.
Following a hearing, the trial court entered summary judgment in favor of Respondents, and ordered the Guaranty to pay $300,000. The court of appeals affirmed, concluding the Act was unambiguous and that its plain language required any recovery from solvent insurers to be deducted from the total amount of the damages rather than from the Guaranty's $300,000 cap. Buchanan , 417 S.C. at 569, 790 S.E.2d at 786. This Court issued a writ of certiorari to review the court of appeals' decision.
II.
The Guaranty argues the court of appeals correctly found the Act was unambiguous but erred in construing its provisions, which the Guaranty claims entitle it to deduct the $376,622 offset from its $300,000 statutory maximum claim obligation, thus eliminating the Guaranty's liability altogether. We disagree. Although we find the court of appeals erred in concluding the relevant statutory provisions are unambiguous, we nevertheless affirm the court of appeals' ultimate construction of the Act.
"Questions of statutory interpretation are questions of law, which we are free to decide without any deference to the court below."
*127 S.C. Prop. & Cas. Ins. Guar. Ass'n v. Brock , 410 S.C. 361, 365, 764 S.E.2d 920, 922 (2014) (quotation marks and citation omitted). "Because [the] Guaranty is a creature of statute, its duties, liabilities, and obligations are controlled by **548 the terms and conditions set forth in the Act." Id. at 365-66, 764 S.E.2d at 922.
The Act defines a covered claim as "an unpaid claim ... which arises out of and is within the coverage and is subject to the applicable limits of an insurance policy to which this chapter applies." S.C. Code Ann. § 38-31-20(8) (2015).[4] The Guaranty "is obligated to the extent of claims existing before the determination of insolvency." Id . § 38-31-60(a). "This obligation includes only the amount each covered claim is in excess of two hundred fifty dollars and is less than three hundred thousand dollars." Id . § 38-31-60(a)(iv). Before seeking payment from the Guaranty, a claimant is required to exhaust "all coverage and limits" available through any other applicable policy. Id . § 38-31-100(1) (2015).
Regarding setoff, the Act provides in relevant part:
(1) A person, having a claim under an insurance policy, whether or not it is a policy issued by a member insurer, and the claim under such other policy arises from the same facts, injury, or loss that gave rise to the covered claim against the association, is required to first exhaust all coverage and limits provided by any such policy. Any amount payable on a covered claim under this chapter must be reduced by the full limits of such other coverage as set forth on the declarations page and the association shall receive a full credit for such limits, or, where there are no applicable limits, the claim must be reduced by the total recovery . Notwithstanding the foregoing, no person may be required to exhaust all coverage and limits under the policy of an insolvent insurer.
(a) A claim under a policy providing liability coverage to a person who may be jointly and severally liable with or a joint tortfeasor with the person covered under the policy of the insolvent insurer that gives rise to the covered claim must be considered to be a claim arising from the same facts, injury, or loss that gave rise to the covered claim against the association. Any amount payable on a covered claim under this chapter must **549 be reduced by the full and combined policy limits of all joint tortfeasers .
(b) To the extent that the association's obligation is reduced by the application of this section, the liability of the person insured by the insolvent insurer's policy for the claim must be reduced in the same amount.
Id . § 38-31-100(1) (emphasis added).[5]
The key phrase "amount payable on a covered claim" is not defined in the Act. In construing its meaning, "[t]he question of Legislative intent is, of course, the pivotal question with which we are here concerned." Crescent Mfg. Co. v. Tax Comm'n , 129 S.C. 480, 485-86, 124 S.E. 761, 763 (1924) (noting "the essential nature and raison d'être of [the subject matter] are properly borne in mind" in approaching the construction of an act).
The Guaranty contends the court of appeals' interpretation of the phrase "amount payable on a covered claim" to be the full amount of the covered claim (i.e. total damages) renders the words "amount payable" meaningless and reads that phrase out of the statute. The Guaranty argues that key phrase is given effect only when the setoff provision in section 38-31-100 is applied to the $300,000 statutory cap rather than the full amount of the claim. In support of its argument, the Guaranty cites CFRE, LLC v. Greenville Cty. Assessor , 395 S.C. 67, 74, 716 S.E.2d 877, 881 (2011) ("In that vein, we must read the statute so that no word, *128 clause, sentence, provision or part shall be rendered surplusage, or superfluous, for the General Assembly obviously intended the statute to have some efficacy, or the legislature would not have enacted it into law." (internal marks and citations omitted) ).
We acknowledge the argument that the phrase "amount payable" must mean something. Indeed, "[t]he various provisions of an act should be read so that all may, if possible, have their due and conjoint effect without repugnancy or inconsistency." Crescent Mfg. Co. , 129 S.C. at 492, 124 S.E. at 765. However, "[t]he court may not, in order to give **550 effect to particular words, virtually destroy the meaning of the entire context; that is, give the particular words a significance which would be clearly repugnant to the statute, looked at as a whole, and destructive of its obvious intent." Id. In reading the provisions of the Act as a whole and bearing in mind its underlying purpose, we conclude the better-reasoned interpretation is that the "amount payable on a covered claim" refers to the claimant's overall damages-not the Guaranty's obligation on a covered claim. Moreover, we find the unmistakable purpose of the Act to hew more closely with the result we reach today. Of course we acknowledge the purpose of the Guaranty is to provide some relief-not necessarily to make an injured claimant whole in every case, hence the limitation on liability. Brock , 410 S.C. at 367-68, 764 S.E.2d at 922. Nevertheless, we cannot conclude the General Assembly envisioned the setoff provision of section 38-31-100 to completely eliminate a severely injured claimant's ability to recover anything from the Guaranty simply by virtue of the fact that his injuries, and thus his partial recovery from other tortfeasors, was greater than $300,000. We decline the invitation to construe the Act in a manner that would be "destructive of its obvious intent." Crescent Mfg. Co. , 129 S.C. at 492, 124 S.E. at 765 (1924).
We acknowledge there is a split of authority from other jurisdictions with similar statutory provisions.[6] However, our analysis is based upon the language and underlying purpose of **551 the South Carolina Act, and we find the lower courts' construction-namely, that any settlement amount is offset from the total claimed damages rather than the $300,000 statutory cap-is most consistent with the language and purpose of the Act.[7]
III.
Based on the foregoing, we find the statutory language is ambiguous. We nevertheless conclude the court of appeals correctly construed the phrase "amount payable on a covered claim" as the total amount of damages suffered under a covered claim, not the Guaranty's statutory maximum claim obligation. We therefore affirm the court of appeals' decision as modified.
BEATTY, C.J., HEARN and JAMES, JJ., concur. FEW, J., concurring in a separate opinion in which KITTREDGE and JAMES, JJ., concur.
*129 I concur fully in Justice Kittredge's majority opinion. I write separately to address a principle of law erroneously employed by the court of appeals as a principle of statutory interpretation.
In Antley v. New York Life Insurance Co. , 139 S.C. 23, 137 S.E. 199 (1927), this Court faced the question of whether an insured may assign the proceeds of a life insurance policy without the consent of the beneficiary. 139 S.C. at 27, 137 S.E. at 200-01. The Court acknowledged that in prior decisions it had given conflicting answers to the question of whether a **552 beneficiary's interest is vested. 139 S.C. at 28-29, 137 S.E. at 201 ; compare, e.g. , Taff v. Smith , 114 S.C. 306, 311, 103 S.E. 551, 553 (1920) (holding the beneficiary holds a vested interest in a life insurance policy); with Bost v. Volunteer State Life Ins. Co. , 114 S.C. 405, 409, 103 S.E. 771, 772 (1920) (holding "the beneficiary does not take a vested interest" in a life insurance policy). Explaining the authority of the Court to resolve the conflict between our prior decisions, we stated,
In this state of conflict between the decisions, it is up to the court to "choose ye this day whom he will serve"; and, in the duty of this decision, this court has the right to determine which doctrine best appeals to its sense of law, justice, and right.
Antley , 139 S.C. at 30, 137 S.E. at 201 (quoting Joshua 24:15 (King James) ).
In choosing between its own conflicting decisions, it is-of course-appropriate for this Court to turn to "its sense of ... justice[ ] and right." We have applied this principle of law-also appropriately-in other contexts. In Huggins v. Commercial & Savings Bank , 141 S.C. 480, 140 S.E. 177 (1927), for example, we addressed a novel question of law not controlled by statute nor governed by any of our prior decisions. We stated,
In the absence of legislative enactment to direct us, with no precedent to bind us, and without decision to guide us, it seems necessary for this court to decide at this time, if it will adopt the rule .... In making this decision, the striking language of Mr. Justice Cothran in a recent case, where the situation was somewhat like the present, seems appropriate:
In this state of conflict between the decisions, it is up to the court to "choose ye this day whom ye will serve"; and, in the duty of this decision, this court has the right to determine which doctrine best appeals to its sense of law, justice, and right.
141 S.C. at 495, 140 S.E. at 182 (quoting Antley , 139 S.C. at 30, 137 S.E. at 201 ).
We have also used this principle of law appropriately on numerous occasions when deciding certified questions from other courts involving novel questions of law not controlled by statute or prior decision. In **553 Donze v. General Motors, LLC , 420 S.C. 8, 800 S.E.2d 479 (2017), for example, we answered certified questions concerning our comparative negligence laws and public policy, neither of which was controlled by statute or prior decision. We stated,
When a certified question raises a novel question of law, this Court is free to answer the question "based on its assessment of which answer and reasoning would best comport with the law and public policies of the state as well as the Court's sense of law, justice, and right."
420 S.C. at 11, 800 S.E.2d at 480 (quoting Drury Dev. Corp. v. Found. Ins. Co. , 380 S.C. 97, 101, 668 S.E.2d 798, 800 (2008) ).
Unfortunately, however, this Court has inappropriately recited this principle of law in cases that did involve statutory interpretation. See, e.g. , Lambries v. Saluda Cty. Council , 409 S.C. 1, 5, 8, 760 S.E.2d 785, 787, 788 (2014) (interpreting "in a matter of first impression" section 30-4-80 of the South Carolina Code (Supp. 2017) ); Sloan v. S.C. Bd. of Physical Therapy Exam'rs , 370 S.C. 452, 466-67, 636 S.E.2d 598, 605-06 (2006) (interpreting as "a novel question of law" subsection 40-45-110(A)(1) of the South Carolina Code (2011) ), overruled on other grounds by *130 Joseph v. S.C. Dep't of Labor, Licensing & Regulation , 417 S.C. 436, 790 S.E.2d 763 (2016) ; Miller v. Aiken , 364 S.C. 303, 306, 613 S.E.2d 364, 365 (2005) (interpreting as "a novel question of law" section 38-77-160 of the South Carolina Code (2015) ).
If it were true courts have the authority to interpret statutes according to a sense of justice and right, then courts would have the power to rewrite statutes to suit their own personal preferences, regardless of legislative intent. Courts do not have that power. Rather, as Justice Kittredge explained in the majority opinion, courts must employ recognized principles of statutory interpretation with the purpose of discerning legislative intent. There is no principle of statutory interpretation that allows a court to simply do what it thinks is just and right. While I agree with the majority that the court of appeals reached the correct result, the court of appeals erred by stating an "appellate court is free to decide" a question of statutory interpretation "based on its assessment of which interpretation and reasoning would best comport with ... the Court's sense of law, justice, and right."
**554 Buchanan v. The S.C. Prop. & Cas. Ins. Guar. Ass'n , 417 S.C. 562, 567, 790 S.E.2d 783, 785 (Ct. App. 2016). This principle of law first articulated in Antley is applicable only when our prior decisions are in conflict or when the Court is faced with novel questions of law not governed by statute or controlled by prior decision. The principle is not applicable to the issue in this case.
KITTREDGE and JAMES, JJ., concur.

S.C. Code Ann. §§ 38-31-10 to -170 (2015 & Supp. 2017).

The complaint also included a survival cause of action, but that claim was dismissed with prejudice in accordance with the parties' settlement agreement and is not at issue in this appeal.

Further, the Guaranty's obligation to pay ceases when $10 million has been paid on behalf of any one insolvent insurer. S.C. Code Ann. § 38-31-60(a)(iv).

It is undisputed Respondents' claim is a covered claim.

Although the Act provides setoff is in the amount of the full policy limits of other available coverage, the parties stipulated in the settlement agreement that the setoff amount in this case would be limited to the amounts actually paid and received.

Compare Arizona Prop. & Cas. Ins. Guar. Fund v. Herder , 156 Ariz. 203, 751 P.2d 519, 523 (1988) (noting the phrase "amount payable on a covered claim" was "neither a model of clarity nor an exemplar of the draftsman's craft" and concluding that phrase "means simply that the total amount payable as damages for the claimant's injuries caused by the covered occurrence shall be reduced by the amount the claimant has recovered"), and Connecticut Ins. Guar. Ass'n v. Union Carbide Corp. , 217 Conn. 371, 585 A.2d 1216, 1224-25 (1991) (construing a similar statutory provision and concluding "[t]he evident purpose of providing in [the statutory section] ... for a reduction of a covered claim 'by the amount of any recovery' from other available insurance was to prevent a person from twice receiving benefits for the same loss or otherwise obtaining a windfall, not to reduce the amount of a claim for a loss that remains partially unsatisfied"), with Blackwell v. Pennsylvania Ins. Guar. Ass'n , 390 Pa.Super. 31, 567 A.2d 1103, 1105 (Pa. 1989) (finding the phrase "any amount payable on a covered claim under this act" referred to the $299,900 statutory cap, not the total amount of the claimant's damages).

Our holding today is also consistent with our appellate courts' interpretation of the Tort Claims Act which, unlike the Guaranty Act, includes an express statement of legislative intent to limit/reduce the government's liability. See S.C. Code Ann. § 15-78-200 (directing that the provisions of the Tort Claims Act "must be liberally construed in favor of limiting the liability of the governmental entity"); Smalls v. S.C. Dep't of Educ. , 339 S.C. 208, 222, 528 S.E.2d 682, 689 (Ct. App. 2000) ("[W]e find the jury verdict should be reduced by the amount of the settlement allocated to each cause of action and then further reduced by the comparative negligence of [the decedent]. Finally, the $250,000 cap under the Tort Claims Act in effect at the time of this action provides the final reduction.").