# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

South Carolina Property and Casualty Insurance
Guaranty Association, Respondent,

v.

South Carolina Second Injury Fund, Appellant.

IN RE:

Michael Quarles, Employee/Claimant,

v.

Cryovac Sealed Air Corporation, Employer, and
Lumbermens Mutual Casualty Company in
Liquidation/South Carolina Property and Casualty
Insurance Guaranty Association, Carrier/Defendants.

Appellate Case No. 2019-000020

Appeal From Greenville County
Robin B. Stilwell, Circuit Court Judge

Opinion No. 5849
Submitted June 1, 2021 – Filed August 18, 2021

**AFFIRMED**

Robert Merrel Cook, II, of The Robert Cook Law Firm,
LLC, of Batesburg-Leesville, and Andrew F. Lindemann,
of Lindemann & Davis, P.A., of Columbia, both for
Appellant.

Joseph Hubert Wood, III, of Wood Law Group, LLC, of Charleston, for Respondent.

—————————

**THOMAS, J.:**  In this workers' compensation case, the South Carolina Second Injury Fund (the Fund) appeals from the circuit court's order affirming the decision of the South Carolina Workers' Compensation Commission (the Commission) to order the Fund to make reimbursements to the South Carolina Property and Casualty Insurance Guaranty Association (the Guaranty Association) for workers' compensation benefits paid by the Guaranty Association for an insolvent insurer. The Fund argues the circuit court and the Commission erred in (1) ruling the Guaranty Association meets the statutory definition of insurer or carrier and is entitled to seek reimbursement from the Fund; (2) concluding the Guaranty Association paid assessments to the Fund and is eligible to seek reimbursement from the Fund; and (3) ruling the claim was not released based on the unambiguous language contained in the settlement agreement and release entered between the Guaranty Association and the Fund.  We affirm.

**FACTS**

Michael Quarles was injured on the job on December 17, 1999.  Pursuant to an agreement entered into between Lumbermens Mutual Insurance Company (Lumbermens) and the Fund, the Fund reimbursed Lumbermens for payments it made for Quarles' injury in numerous installments from November 25, 2003 through January 26, 2014.[1]  Lumbermens was liquidated via an order of the Circuit Court of Cook County, Illinois, dated May 8, 2013.  As a result, the Guaranty Association became responsible for Quarles' claim pursuant to the terms and provisions of the South Carolina Property and Casualty Insurance Guaranty Association Act (the Guaranty Act).  *See* S.C. Code Ann. § 38-31-10 et seq. (2015).  Under the Guaranty Act, the Guaranty Association was considered the insurer to the extent of its obligation on Quarles' covered claim and had all rights, duties, and obligations of Lumbermens, as if Lumbermens had not become insolvent.  *See* S.C. Code Ann. § 38-31-60(b) (2015).  According to the deposition testimony of the Guaranty Association's Executive Director, the Guaranty

—————————

[1]  The Fund was created by South Carolina Code section 42-7-310 (2015) for the purpose of reimbursing employers or carriers for paid compensation or medical benefits.  The Fund was terminated on July 1, 2013, by South Carolina Code section 42-7-320 (2015).

Association was responsible for and paying for Quarles' claim as a covered workers' compensation claim under the Guaranty Act.

On June 17, 2013, the Guaranty Association and the Fund entered into a settlement agreement and release of claims. The agreement stated it concerned the Guaranty Association's claims against the Fund for reimbursement from the Fund for payments on behalf of "certain insureds of Legion Insurance Company, in liquidation and its subsidiaries, including, but not limited to, Villanova Insurance Company" and "Reliance Insurance Company in liquidation, and its subsidiaries, including, but not limited to, Reliance National Indemnity Company, Reliance National Insurance Company, and United Pacific Insurance." The Fund agreed to pay the Guaranty Association $2,900,000 for claims pending against the Fund related to Legion and/or Reliance in exchange for a release of those claims.

The Guaranty Association submitted a claim to the Fund on December 8, 2016, seeking reimbursement for the workers' compensation benefits it paid on behalf of Lumbermens. *See* S.C. Code Ann. §§ 42-9-400, -410 (2015) (providing reimbursement from the Fund). The Fund denied the claim, asserting (1) the Guaranty Association was not statutorily authorized to seek reimbursement from the Fund; (2) the Guaranty Association did not directly participate in funding the Fund; and (3) the 2013 settlement and release between the parties barred the claim for reimbursement. The Single Commissioner ordered the Fund to reimburse the Guaranty Association in accordance with the terms of the previously-approved agreement between the Guaranty Association and the Fund.

The Fund filed a Form 30 Request for Commission Review of the Single Commissioner's order. The Appellate Panel affirmed the Single Commissioner's order in its entirety. The Fund then filed an appeal with the circuit court.[2] After a hearing, the circuit court affirmed the Commission's findings of fact, conclusions of law, and order awarding reimbursement to the Guaranty Association. This appeal follows.

---

[2] The date of accident pre-dated the amendment to South Carolina Code section 42-17-60 (2015), which provided for direct appeals from the Commission to this court.

**LAW/ANALYSIS**

**I.       Statutory Definition**

The Fund argues the circuit court and the Commission erred in ruling the Guaranty Association meets the statutory definition of insurer or carrier and is entitled to seek reimbursement from the Fund.  We disagree.

"The cardinal rule of statutory interpretation is to ascertain and effectuate the intention of the legislature." *Sloan v. Hardee*, 371 S.C. 495, 498, 640 S.E.2d 457, 459 (2007).  "When a statute's terms are clear and unambiguous on their face, there is no room for statutory construction and a court must apply the statute according to its literal meaning." *Id.*  When interpreting a statute, "[w]ords must be given their plain and ordinary meaning without resort to subtle or forced construction to limit or expand the statute's operation." *Id.* at 499, 640 S.E.2d at 459.  "[T]he statute must be read as a whole and sections which are a part of the same general statutory law must be construed together and each one given effect." *S.C. State Ports Auth. v. Jasper Cnty.*, 368 S.C. 388, 398, 629 S.E.2d 624, 629 (2006).  Statutory interpretation is a question of law, which this court is "free to decide without any deference to the court below." *CFRE, LLC v. Greenville Cnty. Assessor*, 395 S.C. 67, 74, 716 S.E.2d 877, 881 (2011).

The Fund was established to make reimbursements to an employer or carrier.  S.C. Code Ann. § 42-7-310.  Section 42-7-310(d)(2) provides the term "carrier" as used in the section "includes all insurance carriers, self-insurers, and the State Accident Fund."  Pursuant to the agreement entered into between Lumbermens and the Fund, the Fund agreed to reimburse Lumbermens for payments it made for Quarles' injury and did so through January 26, 2014.  Although the Fund was terminated on July 1, 2013, by section 42-7-320[3], subsection 42-7-320(B)(3) specified "[i]nsurance carriers, self-insurers, and the State Accident Fund remain[ed] liable for [the Fund] assessments, as determined by the State Fiscal Accountability Authority, in order to pay accepted claims" and that the Fund "shall continue reimbursing employers and insurance carriers for claims accepted by the [F]und on or before December 31, 2011."  "[The] Guaranty [Association] is a last resort insurer created by the legislature to protect consumers in the event that their insurer becomes insolvent." *Hudson ex rel. Hudson v. Lancaster Convalescent Ctr.*, 407 S.C. 112, 124, 754 S.E.2d 486, 492 (2014).  "The legislature has chosen to define a 'covered claim' as a claim arising from an insolvent insurer . . . ." *Id.*

---
[3]  S.C. Code Ann. § 42-7-320.

The Commission noted that section 38-31-60(b) provides the Guaranty Association "is considered the insurer to the extent of its obligation on . . . covered claims and, to this extent, has all rights, duties, and obligations of the insolvent insurer as if the insurer had not become insolvent." Thus, the Guaranty Association is considered the insurer to the extent of its obligation on Quarles' covered claims, and the record established the matter involved a covered workers' compensation claim for which the Guaranty Association was responsible for paying the full amount under section 38-31-60(a). S.C. Code Ann. § 38-31-60(a)–(b). The Commission found it "self-evident that [the Guaranty Association] would not be responsible for paying this claim and would have no reason to be seeking reimbursement from [the Fund] if it was not so authorized." The Commission further found "one of Lumbermens' rights assumed by [the Guaranty Association] is the right to reimbursement from [the Fund] pursuant to, and in accordance with, the approved Agreement to Reimburse Compensation." Finally, the Commission concluded,

> [T]he terms and provisions of [South Carolina Code] § 38-31-90 and § 38-31-100 [(2015)] are not exclusive with regard to [the Guaranty Association's] rights of recoupment and setoff and do not abrogate the rights of an insolvent insurer under the Workers' Compensation Act which [the Guaranty Association] maintains pursuant to § 38-31-60(b).

The circuit court affirmed the Commission's order.

The Fund argues the General Assembly intended that the Guaranty Association should not be treated as a "carrier" for purposes of reimbursement by the Fund. In support, the Fund asserts section 42-1-560, titled "Right to compensation not affected by liability of third party," defined the term "carrier" to explicitly include an association:

> The respective rights and interests of the injured employee, or, in the case of his death, his dependents and any person entitled to sue therefor, and of the employer or person, association, corporation or carrier liable for the payment of compensation and other benefits under this title, hereinafter called the "carrier," in respect to the cause of action and the damages recovered shall be as provided by this section.

S.C. Code Ann. § 42-1-560(a) (2015). Thus, the Fund maintains the General Assembly did not intend for the Guaranty Association to be included in the definition of "carrier" with respect to reimbursement from the Fund. The Fund argues section 38-31-60(b) has limiting language that provides the Guaranty Association is considered an "insurer" only with respect to its "[o]bligations on covered claims," which consists of its liabilities to consumers and not its ability to file claims or seek reimbursement from third parties such as the Fund. Therefore, it asserts the Guaranty Association enjoys "all rights, duties, and obligations of the insolvent insurer" but only with respect to its liability for covered claims. Further, the Fund argues section 38-31-90(2) authorizes the Guaranty Association to recover the amount of any "covered claim" against certain insureds with a high net worth or against "an affiliate of the insolvent insurer" but does not include any other provision authorizing the Guaranty Association to recover the amount of any "covered claim" from any other entity, including the Fund. S.C. Code Ann. § 38-31-90(2) (2015). Finally, the Fund argues the Guaranty Association and the Fund are funded by assessments collected from the same workers' compensation carriers; thus, allowing the Guaranty Association to be reimbursed from the Fund "would be a circuitous action that is largely a meaningless exercise and a waste of resources that substantially originate from the same source."

Our supreme court has said the Guaranty Association is an insurer created by the legislature to protect consumers in the event that their insurer becomes insolvent, and Lumbermans became insolvent while it was paying for Quarles' covered claims. *See Hudson*, 407 S.C. at 124, 754 S.E.2d at 492 ("[The] Guaranty [Association] is a last resort insurer created by the legislature to protect consumers in the event that their insurer becomes insolvent."). Thus, under the statutory authority, the Guaranty Association is considered the insurer to the extent of its obligation on Quarles' covered claims. Viewing the statute as a whole, we agree with the circuit court and the Commission that the Guaranty Association meets the statutory definition of an insurer or carrier and is entitled to seek reimbursement from the Fund.

## II. Assessments

The Fund argues the circuit court and the Commission erred in concluding the Guaranty Association paid assessments to the Fund and is eligible to seek reimbursement from the Fund. We disagree.

Section 42-7-310(d)(2) provides the continuing funding of the Fund would be made by "'equitable assessments upon each carrier, which . . . included all insurance carriers, self-insurers, and the State Accident Fund." Section 38-31-40 states the Guaranty Association is "a nonprofit unincorporated legal entity" and "all insurers defined as member insurers in section 38-31-20(8) are members of the [Guaranty Association] as a condition of their authority to transact insurance in [South Carolina]." S.C. Code Ann. § 38-31-40 (2015).

The Commission found the Fund never assessed the Guaranty Association, and pursuant to section 38-31-40, the Guaranty Association's workers' compensation member insurers paid assessments to the Fund. The Commission noted the Guaranty Association's member insurers paid assessments in accordance with a funding mechanism plan adopted by the State Fiscal Accountability Authority, and there was no indication that any of the member insurers were delinquent in their payment of assessments to the Fund. The Commission determined the Fund had assessed and would continue to assess the Guaranty Association's member insurers for its obligations on the claim. Therefore, the Commission found the Fund's assertion that the Guaranty Association's reimbursement claim was barred for failure to pay assessments was without merit and the Guaranty Association, as an unincorporated entity, effectively paid assessments to the Fund via the assessments paid by its member insurers. The Commission further determined Lumbermens was not in default or delinquent with respect to payment of its assessments and Lumbermens had paid all amounts assessed by the Fund. Finally, the Commissioner concluded:

> Lumbermens' non-participation in the assessment process subsequent to its liquidation [was] not material given that it [was] not in default or delinquent with respect to payment of its assessments; the fact that its assessments would go to zero once it went into liquidation and stopped paying claims and the assessments paid by [the Guaranty Association's] member workers' compensation insurers in accordance with the five year/$60,000,000 per year funding plan adopted by [the State Fiscal Accountability Authority] in connection with which [the Fund's] liability for reimbursement on this claim was considered and included.

The Fund argues the Guaranty Association does not qualify as an "insurance carrier" to whom reimbursement may be made because the Guaranty Association

does not pay any assessments to the Fund.  The Fund acknowledges the Guaranty Association's member insurers are sources of funding for the Fund, but it argues those insurers are paying the assessments because they individually qualify as "carriers" that are statutorily responsible to pay assessments to the Fund and are not paying the assessments for or on behalf of the Guaranty Association.

The Guaranty Association's member insurers paid assessments to the Fund pursuant to section 38-31-40, and there was no indication that any of the member insurers were delinquent in their payment of assessments to the Fund.  Thus, we agree with the circuit court and the Commission that the Guaranty Association effectively paid assessments to the Fund via the assessments paid by its member insurers and is, thus, eligible to seek reimbursement from the Fund.

### III.    Prior Settlement Agreement and Release

The Fund argues the circuit court and the Commission erred in ruling the claim was not released based on the unambiguous language contained in the settlement agreement and release entered between the Guaranty Association and the Fund. We disagree.

"A release is a contract and contract principles of law should be used to determine what the parties intended." *Ecclesiastes Prod. Ministries v. Outparcel Assocs.*, 374 S.C. 483, 497, 649 S.E.2d 494, 501 (Ct. App. 2007).  The primary objective in construing a contract is to ascertain and give effect to the intention of the parties. *Id.*  "Contracts should be liberally construed so as to give them effect and carry out the intention of the parties." *Id.* (quoting *Mishoe v. Gen. Motors Acceptance Corp.*, 234 S.C. 182, 188, 107 S.E.2d 43, 47 (1958)).  "To discover the intention of a contract, the court must first look to its language—if the language is perfectly plain and capable of legal construction, it alone determines the document's force and effect." *Id.* at 498, 649 S.E.2d at 501.  "The parties' intention must be gathered from the contents of the entire agreement and not from any particular clause thereof." *Id.* at 498, 649 S.E.2d at 502.  "It is a question of law for the court whether the language of a contract is ambiguous." *S.C. Dep't of Nat. Res. v. Town of McClellanville*, 345 S.C. 617, 623, 550 S.E.2d 299, 302-03 (2001).  If the court decides the language is ambiguous, "evidence may be admitted to show the intent of the parties," and the determination of the parties' intent is a question of fact.  *Id.* at 623, 550 S.E.2d at 303.  However, if the language is clear and unambiguous, it is a question of law for the court.  *Id.*  Ambiguity of a contract is a question of law, which this court reviews de novo. *McCord v. Laurens Cnty. Health Care Sys.*, 429 S.C. 286, 292, 838 S.E.2d 220, 223 (Ct. App. 2020).

The Fund and the Guaranty Association entered into a settlement agreement and release on June 17, 2013. The agreement stated it concerned the Guaranty Association's claims against the Fund for reimbursement from the Fund for payments on behalf of "certain insureds of Legion Insurance Company, in Liquidation and its subsidiaries, including, but not limited to, Villanova Insurance Company" and "Reliance Insurance Company in liquidation, and its subsidiaries, including, but not limited to, Reliance National Indemnity Company, Reliance National Insurance Company, and United Pacific Insurance." The Fund agreed to pay the Guaranty Association $2,900,000 for claims pending against the Fund related to Legion and/or Reliance in exchange for a release of those claims. The agreement stated:

> The Parties intend this release to be general and comprehensive in nature and to release: (A) all claims related to Legion and/or Reliance and (B) any and all claims, whether related or unrelated to Legion and/or Reliance, on which the [Fund] is currently paying the Guaranty Association as of February 22, 2013, whether known or unknown, noticed or unnoticed, asserted or not asserted, accepted or not accepted, existing or potential . . . .

The Commission found the plain, clear, and unequivocal language in the agreement reflected that beyond the Legion and Reliance claims as defined therein, the settlement and release applied only to those claims on which the Fund was paying the Guaranty Association as of February 22, 2013. The Commission further found the record reflected that (1) Lumbermens was not liquidated until May 8, 2013; (2) the Guaranty Association was not paying the claim as of February 22, 2013; and (3) the Fund had not reimbursed the Guaranty Association in connection with the claim. Thus, the plain, clear, and unequivocal language in the settlement agreement and release, and any reasonable construction thereof, did not effectuate a bar to the Guaranty Association's reimbursement claim or release the Fund from its liability for reimbursement on the claim.

The Fund argues the agreement bars the Guaranty Association's claim for reimbursement or otherwise releases the Fund from its liability for reimbursement on the claim. The Fund contends the current claim for reimbursement of workers' compensation benefits paid to Quarles was included in that settlement, and thus, any liability by the Fund for reimbursement was fully released. The Fund asserts

Lumbermens was ordered liquidated on May 8, 2013, and the Guaranty Association set up a claim and reserves for Quarles on June 4, 2013, both of which pre-dated the June 17, 2013 effective date of the agreement. It admits the Fund was not paying on Quarles' claim on February 22, 2013, but asserts the Commission erred in finding the release did not apply to that claim. The Fund asserts the Commission failed to recognize the parties' express intent that the release was "general and comprehensive in nature." Next, it asserts the Commission failed to give consideration to the language that the "Parties agree that the terms of this Settlement Agreement and Release are to be given the broadest meaning such that the interpretation and construction do substantial justice to the intent of the Parties." Finally, it asserts the Commission erred in focusing on the phrase, "on which the [Fund] is currently paying the Guaranty Association as of February 22, 2013," and concluding any other claims that existed or came into existence after that date were beyond the scope of the release and only claims already known to the Fund and on which payments were being made by February 22, 2013, fell within the scope of the release. The Fund argues that by interpreting the language in a limited manner, the Commission failed to apply the "broadest meaning" as the parties agreed was proper, which was that claims that were not even known or existing as of February 22, 2013, as well as claims on which payments were not being made as of that date, were intended to be included within the scope of the release.

Viewing the agreement as a whole, we find the plain, clear, and unequivocal language in the agreement reflects that beyond the Legion and Reliance claims, the settlement and release applied only to those claims on which the Fund was paying the Guaranty Association as of February 22, 2013, and the Guaranty Association was not paying Quarles' claim as of that date. Thus, we agree with the circuit court and the Commission that the claim was not released based on the unambiguous language contained in the settlement agreement and release entered between the Guaranty Association and the Fund.

**CONCLUSION**

Accordingly, the decision of the circuit court is

**AFFIRMED.**

**WILLIAMS and HILL, JJ., concur.**