# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Richard Walter Meier and the Estate of William Carl Meier, by and through Conrad Meier, its Personal Representative, Appellants,

v.

Mary J. Burnsed, Respondent.

Appellate Case No. 2019-000518

———————

Appeal From Beaufort County
Marvin H. Dukes, III, Special Circuit Court Judge

———————

Opinion No. 5947
Heard February 9, 2022 – Filed September 28, 2022

———————

**REVERSED**

———————

H. Fred Kuhn, Jr., of Moss & Kuhn, PA, of Beaufort, for Appellants.

Peggy McMillan Infinger, of Belk Cobb Infinger & Goldstein, PA, of Charleston; Paul H. Infinger, of Paul H. Infinger, LLC, of Beaufort; and James B. Richardson, Jr., of Columbia; all for Respondent.

———————

**KONDUROS, J.:** In this dispute over the proceeds of a life insurance policy, Richard Walter Meier and the Estate of William Carl Meier, by and through Conrad Meier, its personal representative, (collectively, the Meiers) appeal the circuit court's grant of summary judgment to Mary J. Burnsed. They contend the court erred in finding section 62-2-507 of the South Carolina Code (2022) did not

apply to revoke a beneficiary designation made before a divorce when both the beneficiary designation and divorce occurred prior to the effective date of the statute.  We reverse.

## FACTS/PROCEDURAL HISTORY

William Carl Meier (William) and Burnsed married on July 19, 1997.  On June 16, 1998, William obtained a $250,000 life insurance policy (the Policy) from Western Reserve Life Assurance Company of Ohio.[1]  He designated Burnsed as the primary beneficiary and his brother Richard as the contingent beneficiary.[2]  William and Burnsed divorced on November 26, 2002.  The family court stated in the divorce decree: "Neither party desires spousal support or alimony from the other party, and each party waives any claim he/she may have against the other party. . . .  Neither party has acquired assets or debts during the marriage in which the other party would have an equitable interest."  William paid the premiums for the Policy and maintained the Policy until his unexpected death on December 26, 2017.

On February 5, 2018, the Meiers filed an action against Burnsed and Transamerica asserting there exists a justiciable controversy over the proper beneficiary of the Policy.  They asserted the divorce of William and Burnsed revoked William's designation of Burnsed as beneficiary under section 62-2-507(c) of the South Carolina Code (2022), which codifies the presumption an insured does not intend his or her former spouse to remain a beneficiary of any insurance policies after divorce.  S.C. Code Ann. § 62-2-507 reporter's cmt. (2022).

On April 12, 2018, Burnsed filed an answer, counterclaim, and cross-claim, asserting section 62-2-507 did not operate to revoke her as primary beneficiary of the Policy.  She counterclaimed for tortious interference with a contract and cross-claimed against Transamerica for breach of contract and unreasonable and bad faith refusal to pay benefits under contract.

On April 20, 2018, the Meiers filed a motion for summary judgment, asserting William and Burnsed's divorce revoked the designation of Burnsed as the

---

[1] Western merged into Transamerica Premier Life Insurance Company effective October 1, 2014.  Transamerica assumed all rights and obligations of the insurer under the Policy.

[2] The Meiers maintain William named Richard instead of Conrad, his son from a previous marriage, because Conrad was a minor at the time William obtained the Policy.

beneficiary, pursuant to section 62-2-507(c).  They requested the circuit court declare Burnsed was not a beneficiary of the Policy and order Transamerica to pay Richard the proceeds from the Policy as alternate beneficiary.

On April 23, 2018, Transamerica filed an answer, counterclaim in interpleader, and cross-claim in interpleader.  It asserted it was "unable to determine the correct recipient of the death benefit payable under the Policy[] and the correct recipient should be determined by" the court.  It maintained all issues alleged in the complaint should be resolved through interpleader.  Transamerica requested the court order it to pay $250,000 into the registry of the court and discharge it from further liability and dismiss it as a party with prejudice.  On May 11, 2018, Transamerica filed an answer to Burnsed's cross-claims, requesting they be dismissed.

On May 30, 2018, Burnsed filed a motion for summary judgment, arguing South Carolina Act Number 100 of 2013 (the Act),[3] codified as section 62-2-507, does not retroactively apply in the case of any divorce entered before January 1, 2014, the effective date of the statute.

Burnsed and the Meiers submitted affidavits with their motions for summary judgment.  The Meiers' affidavits asserted William wanted his son to receive the Policy's proceeds whereas Burnsed's affidavits described her continuing close relationship with William after their divorce and stated William "frequently reminded" her that she was the beneficiary of his Policy.  Burnsed also submitted emails and text messages she and William exchanged in the years after their divorce.

On June 18, 2018, with the consent of the parties, the circuit court granted Transamerica's motion to deposit the $250,000 payable under the Policy along with any applicable interest into the registry of the court.

---

[3] Act No. 100, § 1, 2013 S.C. Acts 529, 588-91.  The legislature later amended section 62-2-507 again and that amendment went into effect on May 18, 2018.  The second amendment added only the following language to subsection (a)(4) of the section: "'Governing instrument' does not include a beneficiary designation made in connection with a governmental employee benefit plan established or maintained for employees of the government of the State or a political subdivision thereof, or by an agency or instrumentality of any of the foregoing."  Act No. 250, § 1, 2018 S.C. Acts 1816, 1816-17.

On June 26, 2018, the circuit court[4] held a hearing[5] on the Meiers' motion for summary judgment. On August 10, 2018, the circuit court filed an order denying the Meiers' motion. The court found: "The question presented by this case is whether [section 62-2-507] can apply to [a] life insurance policy when both the policy and the divorce occurred before this statute was enacted, yet the death of the owner of the insurance policy occurred after the enactment of the statute." The court found section "62-2-507 is not retroactive under th[o]se facts." The court looked at several cases from other jurisdictions. One of those cases, *Stillman v. Teachers Insurance & Annuity Ass'n College Retirement Equities Fund*, 343 F.3d 1311 (10th Cir. 2003), from the United States Court of Appeals for the Tenth Circuit, which examined a Utah statute. The circuit court found that unlike the Utah statute, which explicitly stated that amendments to the statute applied to "governing instruments executed before" the amendments, "the South Carolina probate code has no equivalent provision in the language of the code itself." The court noted however, that the "language [referenced by the Tenth Circuit] does appear in the Reporter's Comment of some acts that were later codified into the probate code, but it does not appear in [the Act] [section] 1, which was codified as . . . [section] 62-2-507, the statute in dispute here." The circuit court determined "the [Utah] statutory language upon which the Tenth Circuit relied does not exist in the South Carolina code." The court also looked at the United States Supreme Court case of *Sveen v. Melin*, 138 S. Ct. 1815 (2018), which examined the constitutionality of retroactively applying a revocation-upon-divorce statute. The court distinguished *Sveen*, noting that "while the retroactive application of the revocability statute might not have been unconstitutional in [*Sveen*], there are reasons to believe that, under the circumstances currently before the court, . . . [section] 62-2-507 does change [William's] contractual relationship with the insurance company."

On March 11, 2019, the circuit court[6] held a hearing on Burnsed's motion for summary judgment. On March 21, 2019, the circuit court filed an order granting Burnsed's motion. The court found section 62-2-507(c) "was not intended by the General Assembly to apply retroactively in the case of a divorce entered before the effective date of the statute." This appeal followed.

---

[4] The Honorable Perry M. Buckner heard the motion.

[5] The transcript of this hearing is not contained in the record; this hearing only involved the Meiers' motion for summary judgment and not Burnsed's, which was heard later.

[6] The Honorable Marvin H. Dukes III, sitting as special circuit court judge, heard this motion.

**STANDARD OF REVIEW**

The purpose of summary judgment is to expedite the disposition of cases not requiring the services of a fact finder. *George v. Fabri*, 345 S.C. 440, 452, 548 S.E.2d 868, 874 (2001). When reviewing the grant of a summary judgment motion, this court applies the same standard that governs the trial court under Rule 56(c), SCRCP. *Fleming v. Rose*, 350 S.C. 488, 493, 567 S.E.2d 857, 860 (2002). "When the parties file cross-motions for summary judgment, the issue becomes a question of law for the [c]ourt to decide de novo." *S.C. Pub. Int. Found. v. Calhoun Cnty. Council*, 432 S.C. 492, 495, 854 S.E.2d 836, 837 (2021); *see also Quicken Loans, Inc. v. Wilson*, 425 S.C. 574, 579, 823 S.E.2d 697, 700 (Ct. App. 2019) ("Whe[n] cross[-]motions for summary judgment are filed, the parties concede the issue before us should be decided as a matter of law." (quoting *Wiegand v. U.S. Auto. Ass'n*, 391 S.C. 159, 163, 705 S.E.2d 432, 434 (2011))).

"[T]he interpretation of a statute is a question of law for the [c]ourt to review de novo." *Calhoun Cnty. Council*, 432 S.C. at 495, 854 S.E.2d at 837. "Determining the proper interpretation of a statute is a question of law, and this [c]ourt reviews questions of law de novo." *Buchanan v. S.C. Prop. & Cas. Ins. Guar. Ass'n*, 417 S.C. 562, 566, 790 S.E.2d 783, 785 (Ct. App. 2016) (quoting *Lambries v. Saluda Cnty. Council*, 409 S.C. 1, 7, 760 S.E.2d 785, 788 (2014)), *aff'd as modified*, 424 S.C. 542, 819 S.E.2d 124 (2018). "Questions of law may be decided with no particular deference to the trial court." *Wilson*, 425 S.C. at 579, 823 S.E.2d at 700 (quoting *Wiegand*, 391 S.C. at 163, 705 S.E.2d at 434). "In a case raising a novel issue of law regarding the interpretation of a statute, the appellate court is free to decide the question with no particular deference to the lower court." *Buchanan*, 417 S.C. at 566, 790 S.E.2d at 785 (quoting *Lambries*, 409 S.C. at 7-8, 760 S.E.2d at 788). "The appellate court is free to decide the question based on its assessment of which interpretation and reasoning would best comport with the law and public policies of this state and the [c]ourt's sense of law, justice, and right." *Id*. at 567, 790 S.E.2d at 785 (quoting *Lambries*, 409 S.C. at 8, 760 S.E.2d at 788).

"Generally, an action on a life insurance policy is a legal action involving a question of contract law." *Est. of Revis ex rel. Revis v. Revis*, 326 S.C. 470, 476, 484 S.E.2d 112, 115 (Ct. App. 1997). "Thus, for example, where the action involves the question of the entitlement of a widow to life insurance proceeds after she has caused the death of her spouse, the action is one at law." *Id*.

**LAW/ANALYSIS**

The Meiers contend the circuit court erred in concluding section 62-2-507 of the South Carolina Code (2022) did not revoke the designation of Burnsed as beneficiary of the Policy and accordingly granting summary judgment to Burnsed. They maintain the circuit court incorrectly determined that applying section 62-2-507 to the facts of this case would be a retroactive application and that such retroactive application would be wrong because retroactive application was neither expressly nor impliedly authorized. They assert retroactive application of the statute is not required to revoke the designation simply because the divorce preceded the statute's enactment. They contend the death of the insured was the event that triggered the application of the statute. Additionally, they argue the statute itself expresses it applies retroactively because it states the Act applies to "governing instruments," i.e., a life insurance beneficiary designation, "executed before the effective date of the act unless there is a clear indication of a contrary intent" in the terms of the life insurance beneficiary designation. We agree.

"The primary rule of statutory construction is to ascertain the intent of the General Assembly." *S.C. Pub. Int. Found. v. Calhoun Cnty. Council*, 432 S.C. 492, 497, 854 S.E.2d 836, 838 (2021). "Whe[n] the statute's language is plain, unambiguous, and conveys a clear, definite meaning, the rules of statutory interpretation are not needed and the court has no right to impose another meaning." *Id.* (quoting *Town of Mt. Pleasant v. Roberts*, 393 S.C. 332, 342, 713 S.E.2d 278, 283 (2011)). "Accordingly, courts will 'give words their plain and ordinary meaning without resort to subtle or forced construction to limit or expand the statute's operation.'" *Id.* (quoting *State v. Sweat*, 386 S.C. 339, 350, 688 S.E.2d 569, 575 (2010)). "A statute should be given a reasonable and practical construction consistent with the purpose and policy expressed in the statute." *Ga.-Carolina Bail Bonds, Inc. v. County of Aiken*, 354 S.C. 18, 22, 579 S.E.2d 334, 336 (Ct. App. 2003). "Once the Legislature has made [a] choice, there is no room for the courts to impose a different judgment based upon their own notions of public policy." *S.C. Farm Bureau Mut. Ins. Co. v. Mumford*, 299 S.C. 14, 20, 382 S.E.2d 11, 14 (Ct. App. 1989).

Section 62-2-507 of the South Carolina Code states a "divorce . . . revokes any revocable . . . beneficiary designation made by a divorced individual to the divorced individual's former spouse in a governing instrument," "[e]xcept as provided by the express terms of a governing instrument, a court order, or a contract relating to the division of the marital estate made between the divorced individuals before or after the marriage[] [or] divorce." S.C. Code Ann.

§ 62-2-507(c)(1)(i).[7]  The statute defines governing instrument as "an instrument executed by the divorced individual before the divorce. . . [from] the individual's former spouse including, but not limited to wills, revocable inter vivos trusts, powers of attorney, life insurance beneficiary designations, annuity beneficiary designations, retirement plan beneficiary designations[,] and transfer on death accounts."  S.C. Code Ann. § 62-2-507(a)(4).

The Reporter's Comment to the section states, "The 2013 amendment expand[ed] this section to cover life insurance . . . beneficiary designations . . . to the former spouse that the divorced individual established before the divorce . . . ."  S.C. Code Ann. § 62-2-507 reporter's cmt. (2022).  The comment further provides, "This section effectuates a decedent's presumed intent: without a contrary indication by the decedent, a former spouse will not receive any probate or nonprobate transfer as a result of the decedent's death."  *Id.*  The Act indicated it took effect on January 1, 2014 and on that date, unless otherwise provided in the Act, "any rule of construction or presumption provided in this act *applies to governing instruments executed before the effective date of the act* unless there is a clear indication of a contrary intent in the terms of the governing instrument," subject to item (5) and subsection (C).[8]  Act No. 100, § 4(A), (B)(4), 2013 S.C. Acts 529, 1038-39 (emphasis added).

---

[7] Prior to the enactment of section 62-2-507, this court held, "Generally, in South Carolina, divorce does not per se affect the rights of a beneficiary interest." *Stribling v. Stribling*, 369 S.C. 400, 405, 632 S.E.2d 291, 293 (Ct. App. 2006). "However, it is generally recognized that a beneficiary may contract away the beneficiary interest through a separation or property settlement agreement, even if the beneficiary designation is not formally changed." *Id.* at 405, 632 S.E.2d at 294. In *Davis v. Southern Life Insurance Co.*, our supreme court ruled that during the lifetime of the insured, the named beneficiary has no vested property right in a life insurance contract, but merely an expectancy, when a right to change the beneficiary has been reserved to the insured in the policy. 249 S.C. 194, 199, 153 S.E.2d 399, 401 (1967); *see also Stribling*, 369 S.C. at 406, 632 S.E.2d at 294 (noting the beneficiary to a life insurance policy merely has an expectancy interest in the policy until the owner's death).

[8] Item (5) provides "an act done and any right acquired or accrued before the effective date of the act is not affected by this act."  Act No. 100, § 4(B)(5), 2013 S.C. Acts 529, 1039.  Subsection (C) states, "If a right is acquired, extinguished, or barred upon the expiration of a prescribed period that has commenced to run under any other statute before the effective date of the act, that statute continues to apply

Justice Breyer has explained the reasoning behind states enacting statutes like section 62-2-507 that revoke life insurance beneficiary designations of a spouse upon divorce: "As many jurisdictions have concluded, divorced workers more often prefer that a child, rather than a divorced spouse, receive those assets.  Of course, an employee can secure this result by changing a beneficiary form; but doing so requires awareness, understanding, and time."  *Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 158-59 (2001) (Breyer, J., dissenting).  "That is why . . . many . . . jurisdictions have created a statutory assumption that divorce works a revocation of a designation in favor of an ex-spouse."  *Id.* at 159.  "That assumption is embodied in the Uniform Probate Code; it is consistent with human experience; and those with expertise in the matter have concluded that it 'more often' serves the cause of '[j]ustice.'"  *Id.* (alteration by dissent) (quoting John H. Langbein, *The Nonprobate Revolution and the Future of the Law of Succession*, 97 Harv. L. Rev. 1108, 1135 (1984)).[9]

"Retroactive legislation, though frequently disfavored, is not absolutely proscribed."  *Kirven v. Cent. States Health & Life Co., of Omaha*, 409 S.C. 30, 40, 760 S.E.2d 794, 799 (2014) (quoting *In re Marriage of Bouquet*, 546 P.2d 1371, 1376 (Cal. 1976)), *opinion after certified question answered*, No. 3:11-CV-2149-MBS, 2014 WL 12734325 (D.S.C. Dec. 12, 2014).  "Indeed, a state may pass retrospective laws absent direct constitutional prohibition."  *Id.*  "In the construction of statutes, there is a presumption that statutory enactments are to be considered prospective rather than retroactive in their operation unless there is a specific provision or clear legislative intent to the contrary."  *Hercules Inc. v. S.C.*

_____

to the right even if it has been repealed or superseded."  Act No. 100, § 4(C), 2013 S.C. Acts 529, 1039.

[9] An opinion from a New York surrogate's court has also recognized the same reasons for enacting these types of statutes.  *See In re Est. of Sugg*, 12 N.Y.S.3d 842, 847 (Sur. Ct. 2015) ("Revocation-by-divorce statutes adopt the presumption that in the vast majority of cases the testator's failure to revoke his will subsequent to divorce is due to neglect." (quoting Alan S. Wilmit, *Applying the Doctrine of Revocation by Divorce to Life Insurance Policies*, 73 Cornell L. Rev. 653, 659 (1988))); *id.* ("[A] person is as likely to neglect to change the beneficiary of a life insurance policy as to neglect to change a will." (alteration by court) (quoting Wilmit, 73 Cornell L. Rev. at 671-72)); *id.* ("Even with ample time to notify the insurance company, divorced spouses procrastinate or neglect their personal financial matters." (quoting Susan N. Gary, *Applying Revocation-On-Divorce Statutes to Will Substitutes*, 18 Quinnepac Prob. L.J. 83, 95 (2004))).

*Tax Comm'n*, 274 S.C. 137, 143, 262 S.E.2d 45, 48 (1980).  "A principal exception to . . . [this] presumption is that remedial or procedural statutes are generally held to operate retrospectively."  *Id.*; *see also Goff v. Mills*, 279 S.C. 382, 386, 308 S.E.2d 778, 780 (1983) (noting the supreme "[c]ourt has consistently approved retroactive application of statutes [that] provide procedural or remedial benefits as opposed to statutes affecting vested or substantial rights").

"No statute will be applied retroactively unless that result is so clearly compelled as to leave no room for reasonable doubt . . . ."  *Boyd v. Boyd*, 277 S.C. 416, 418, 289 S.E.2d 153, 154 (1982) (omission by court) (quoting *Hyder v. Jones*, 271 S.C. 85, 88, 245 S.E.2d 123, 125 (1978)).  In *Boyd*, the court found the statute at issue "contain[ed] no specific provision mandating retroactive application, and [the court was] unable to glean any legislative intention from the statute other than that of prospective application."  *Id.*; *see also Schall v. Sturm, Ruger Co.*, 278 S.C. 646, 650, 300 S.E.2d 735, 737 (1983) (holding that when the act enacting a statute contained nothing "beyond a statement of its 'effective date,' we must follow the well-settled rule that a statute may not be applied retroactively in the absence of specific provision or clear legislative intent to the contrary"); *Fid. & Cas. Ins. Co. of N.Y. v. Nationwide Ins. Co.*, 278 S.C. 332, 334, 295 S.E.2d 783, 784 (1982) ("[T]he language of the . . . amendment to [a statute] d[id] not indicate an intention by the legislature to give the amendment retroactive effect.  In the absence of a clear indication of such an intention, statutes will not be given retroactive effect.").

"In addition to looking at whether the statute is remedial in nature, the United States Supreme Court has enunciated a test to determine if an injustice would occur as a result of the retroactive application of a law."  *SCDSS/Child Support Enf't v. Carswell*, 359 S.C. 424, 431, 597 S.E.2d 859, 862 (Ct. App. 2004).  "The three factors to consider are: the nature and identity of the parties, the nature of their rights, and the nature of the impact of the change in law upon those rights."  *Id.* (citing *Bradley v. Sch. Bd. of City of Richmond*, 416 U.S. 696, 717 (1974)).

This case is the first time a South Carolina appellate court has examined amended section 62-2-507.[10]  However, two federal district courts for South Carolina have

---

[10] Burnsed has provided this court with a supplemental citation to a recent Alabama federal district court case that looked at the application of this statute when a couple divorced in South Carolina before the Act took effect.  *State Farm Life Ins. Co. v. Benham*, No. 2:21-CV-00695-AKK, 2021 WL 5989081, at *2-3 (N.D. Ala. Dec. 17, 2021).  However, in that case, the divorce agreement required the life insurance policy designating the wife as the beneficiary remain in effect.

considered whether the amendment applies retroactively and reached different conclusions.  The court first considered the issue in *State Farm Life Insurance Co. v. Murphy*, No. 2:15-CV-04793-DCN, 2017 WL 4551489 (D.S.C. Oct. 12, 2017). In that case, the district court stated, "The court is making somewhat of an educated guess as to the intent of South Carolina's legislature in drafting this statute, as there are only three cases interpreting [section] 62-2-507."  *Id.* at *3. The court noted, "Of these cases, one is this court's own ruling in this case dismissing [an ex-spouse's] breach of contract and civil conspiracy claims against third-party defendants.  The other two cases have addressed whether the statute is preempted by the Employment Retirement Income Security Act of 1974 ('ERISA')."  *Id.*  The *Murphy* case largely focused on whether a "final court order mandating the equitable distribution of all marital property and debt is a 'divorce or annulment' within the meaning of the statute," which the court determined it was.[11] *Id.*  Following that determination, the court then found the parties "were divorced before the January 1, 2014 effective date of the amended . . . [section] 62-2-507. Therefore, . . . [section] 62-2-507 does not bar [the ex-spouse]'s claim for the $100,000 in policy proceeds."  *Id.* at *4.

---

*Id.* at *4.  Much of the dispute in that case concerned if the wife was entitled to all $100,000 of the policy's proceeds because the divorce agreement required the policy be in the amount of at least $50,000.  *Id.* at *1-5.  The Alabama district court ultimately made its decision without relying on South Carolina's revocation-upon-divorce statute but noted it had "serious doubts about the retroactivity of the amended [South Carolina] law."  *Id.* at *5.  The court noted that no South Carolina appellate court had examined this issue but pointed to the circuit court's ruling in the present case, which concluded the statute "does not apply retroactively to divorces entered before the effective date of the amendment."  *Id.* at *5 n.8.  The district court found that "reviewing the express terms of the statute, and considering the implications of retroactivity, the court agrees that the revocation-upon-divorce statute is best read as applying prospectively."  *Id.*  The court found, "The statute's terms do not state otherwise, and it would be illogical to apply a statute meant to 'effectuate[ ] a decedent's presumed intent' to life insurance beneficiary designations in divorce agreements formed before the amendment of the statute to include them."  *Id.* (alteration by court) (quoting S.C. Code Ann. § 62-2-507 reporter's cmt.).

[11] The family court issued a final order approving a separation agreement and adopting it as the order of the court on August 5, 2010; the family court issued a final order of divorce on March 17, 2014.  *Murphy*, 2017 WL 4551489, at *1.

The second South Carolina district court case to consider the amended statute was *Protective Life Insurance Co. v. LeClaire*, No. 7:17-CV-00628-AMQ, 2018 WL 3222796 (D.S.C. July 2, 2018). In that case, the couple divorced on August 20, 2003; the insured died on July 18, 2016; and the action was brought on March 7, 2017. *Id.* at *3. The court noted the effective date of the Act was January 1, 2014. *Id.* The court stated "(1) th[e] [A]ct applies to any estates of decedents dying thereafter and to all trusts created before, on, or after its effective date; (2) the [A]ct applies to all judicial proceedings concerning estates of decedents and trusts commenced on or after its effective date," except as otherwise provided in the Act. *Id.* (quoting S.C. Code Ann. tit. 62, art. 2(B)). One side "argue[d] that the statute should apply retroactively and that doing so does not violate the constitutional prohibition against impairment of contracts" and the ex-spouse did "not respond directly to this motion, but file[d] a motion for summary judgment arguing that, inter alia, the statute does not apply." *Id.* The district court determined, "the statute and the associated legislative notes shows that the South Carolina Legislature intended for a divorce or annulment to revoke the disposition or appointment of property, including beneficiary interests to a former spouse, unless expressly provided otherwise." *Id.* at *4. The court further found, "The statute applies to all judicial proceedings concerning estates of decedents and trusts commenced on or after the effective date of January 1, 2014. As the Decedent passed away after the effective date, the instant matter must be considered within the purview of the statute."[12] *Id.*

---

[12] The court also addressed whether the life insurance designation in the policy was irrevocable, which is not an issue in the present case. *LeClaire*, 2018 WL 3222796, at *5. Additionally, the court examined whether retroactively applying section 62-2-507 to the policy would impair the obligations of the contracts between the ex-spouse and the life insurance company "in violation of the Contracts Clauses of the state and federal constitutions." *Id.* at *4. The court noted the United States Supreme Court had "addressed this question squarely in an opinion," which "specifically referenced South Carolina as one of 26 states having adopted a 'revocation-on-divorce' law substantially similar to the one at issue in that case." *Id.* (citing *Sveen v. Melin*, 138 S. Ct. 1815 (2018)). The district court stated the Supreme "Court concluded that such a statute does not substantially impair pre-existing contractual arrangements even where the designation under the policy was made before the statute was enacted"; "such a law merely puts in place a presumption about what an insured wants after divorcing, which, as is the case here, may be changed by the insured with 'the stroke of a pen.'" *Id.* (quoting *Sveen*, 138 S. Ct. at 1823). The court determined the *Sveen* opinion settled that section 62-2-507 did not violate the Contracts Clause. *Id.* The court also noted because

In *Sveen*, the United States Supreme Court looked at "whether applying Minnesota's automatic-revocation rule[13] to a beneficiary designation made before the statute's enactment violates the Contracts Clause of the Constitution." 138 S. Ct. at 1818. The Court "granted certiorari . . . to resolve a split of authority over whether the Contracts Clause prevents a revocation-on-divorce law from applying to a pre-existing agreement's beneficiary designation." *Id.* at 1821.

In that case, the couple married in 1997, and the husband bought a life insurance policy in 1998. *Id.* The husband named the then-wife as the primary beneficiary and designated his two children from a prior marriage as the contingent beneficiaries. *Id.* The couple divorced in 2007, the divorce decree did not mention the insurance policy, the husband did nothing at that time or later to revise his beneficiary designations, and the husband passed away in 2011. *Id.* The husband's children and the now ex-wife both filed claims for the insurance proceeds. *Id.*; *Metro. Life Ins. Co.*, 853 F.3d at 411. The children "contend[ed] that under Minnesota's revocation-on-divorce law, their father's divorce canceled [the ex-wife's] beneficiary designation and left . . . them as the rightful recipients." *Sveen*, 138 S. Ct. at 1821. The ex-wife noted the Minnesota law did not exist when the husband bought the policy and named her as the primary beneficiary and argued "applying the later-enacted law to the policy would violate the Constitution's Contracts Clause, which prohibits any state 'Law impairing the Obligation of Contracts.'" *Id.* (quoting U.S. Const. art. I, § 10, cl. 1).

The *Sveen* Court held the application of the revocation-upon-divorce statute in that case did not violate the Contracts Clause. *Id.* at 1818. The Court found the Minnesota statute, as well as the model code it followed, applied the following understanding, which had previously been applied to wills, to beneficiary designations in life insurance policies: most parties following a divorce do not wish to enrich their former spouse. *Id.* at 1822-23. The Court found that the ex-wife correctly "notes that this extension raises a brand-new constitutional question

"the South Carolina Supreme Court applies the same standard for analyzing contract clause claims under the state constitution as federal courts apply to the Contract Clause under the federal constitution," the contract clause under the state constitution is not violated. *Id.* at *5. We discuss *Sveen* in depth below.

[13] "In 2002, Minnesota amended its probate code to apply the revocation-upon-divorce statute to life insurance beneficiary designations . . . ." *Metro. Life Ins. Co. v. Melin*, 853 F.3d 410, 411 (8th Cir. 2017), *rev'd sub nom. Sveen*, 138 S. Ct. at 1821.

because 'an insurance policy is a contract under the Contracts Clause, and a will is not.'" *Id.* at 1823. However, the Court indicated the old legislative presumption needs to "equally fit the new context: A person would as little want his ex-spouse to benefit from his insurance as to collect under his will. Or said otherwise, the insured's failure to change the beneficiary after a divorce is more likely the result of neglect than choice." *Id.* The Court found "that means the Minnesota statute often honors, not undermines, the intent of the only contracting party to care about the beneficiary term." *Id.* The Court noted "[t]he law no doubt changes how the insurance contract operates," but found "for lots of policyholders" it does not impair the contract and instead does "the opposite." *Id.*

The Court further recognized that "even when presumed and actual intent diverge, the Minnesota law is unlikely to upset a policyholder's expectations at the time of contracting" "because an insured cannot reasonably rely on a beneficiary designation remaining in place after a divorce" due to divorce courts' "wide discretion to divide property between spouses when a marriage ends." *Id.* Additionally, the Supreme Court observed the "statute places no greater obligation on a contracting party" and "impos[es] a lesser penalty for noncompliance. Even supposing an insured wants his life insurance to benefit his ex-spouse, filing a change-of-beneficiary form with an insurance company is as 'easy' as . . . providing a landowner with notice or recording a deed." *Id.* at 1824 (quoting *Curtis v. Whitney*, 80 U.S. 68, 71 (1871)). The Court noted that "with only 'minimal' effort, a person can 'safeguard' his contractual preferences. And here too, if he does not 'wish to abandon his old rights and accept the new,' he need only 'say so in writing.'" *Id.* at 1824-25 (first quoting *Texaco, Inc. v. Short*, 454 U.S. 516, 531 (1982); and then quoting *Gilfillan v. Union Canal Co. of Pa.*, 109 U.S. 401, 406 (1883)).

The Court further noted that if a decedent wants an ex-spouse to remain as beneficiary but does not send in the form, the "worst" consequence that could occur "pales in comparison with the losses incurred in . . . earlier cases." *Id.* at 1825. The Court observed that in those earlier cases, "[w]hen a person ignored a recording obligation," that person "could forfeit the sum total of his contractual rights." *Id.* But the Court contrasted that with the result "when a policyholder in Minnesota does not redesignate his ex-spouse as beneficiary"; in that situation, the policy holder's "right to insurance does not lapse; . . . his contingent beneficiaries . . . receive the money." *Id.* The Court expounded, "That redirection of proceeds is not nothing; but under our precedents, it gives the policyholder—who, again, could have 'easily' and entirely escaped the law's effect—no right to complain of a

Contracts Clause violation." *Id.* (quoting *Conley v. Barton*, 260 U.S. 677, 681 (1923)).[14]

Many states and also federal courts have examined whether particular statutes revoking a beneficiary designation of a spouse following divorce apply in situations with timing similar to the one here. Based on our research, the majority of those decisions find that statutes apply to revoke the beneficiary designation. Most if not all of these statutes are based on the Uniform Probate Code. We examine a few of those cases here because we find their reasoning helpful in light of the fact that no South Carolina appellate court has previously considered the application of our state's version of the statute.

The Colorado Supreme Court has discussed the application of a revocation-upon-divorce statute under facts similar to those here and held its legislature intended its statute "to be retroactive and that such retroactive application is neither unconstitutionally retrospective nor unconstitutionally impairs contracts." *In re Est. of DeWitt*, 54 P.3d 849, 853 (Colo. 2002) (en banc). The court stated that "[p]rior to July 1, 1995, Colorado law provided that the dissolution of marriage did not revoke a former spouse's designation as beneficiary of a life insurance policy absent an intent to the contrary expressed by the insured." *Id.* at 852. However, in 1995, the general assembly enacted a statute based on the Uniform Probate Code that "represent[ed] a legislative determination that the failure of an insured to revoke the designation of a spouse as beneficiary after dissolution of the marriage more likely than not represents inattention." *Id.* The court determined the statute accordingly "attempt[ed] to give effect to the presumptive intent of the decedent" by "revok[ing] all probate and non-probate transfers to a spouse upon dissolution of a marriage, thus preventing an individual from receiving property from her former spouse's estate at death unless certain express provisions to the contrary apply." *Id.*

---

[14] In a Minnesota federal district court case, the court noted that even if applying a revocation-upon-divorce statute did substantially impair a deceased former spouse's contractual rights, any impairment would "survive a constitutional challenge because the impairment is justified and reasonable in that it serves important public purposes, including promoting uniformity among state law treatment of probate and non-probate transfers and implementing a rule of construction that reflects legislative judgment that ex-spouses often intend to change their beneficiaries." *Lincoln Benefit Life Co. v. Heitz*, 468 F. Supp. 2d 1062, 1069 (D. Minn. 2007) (citations omitted).

The court found the statute "specifically provides that it applies to estates, wills, and governing instruments of decedents who die on or after July 1, 1995." *Id.* The court noted that in the cases it was examining on appeal, the decedents had "died after July 1, 1995, but their marriages to the beneficiaries [were] dissolved before July 1, 1995." *Id.* Accordingly, the court stated it needed to decide "whether [the statute] automatically revoked the designation of a former spouse as the beneficiary of a life insurance policy, whe[n] the designation and the dissolution of marriage occurred before the statute's effective date, but the decedent's death occurred after the statute's effective date." *Id.*

The court "first determine[d] that the general assembly intended [the statute] to be applied retroactively." *Id.* at 853. The court then found that based on that determination, it next needed to "decide whether such application is unconstitutionally retrospective." *Id.* The court stated that because of "the unique nature of a life insurance policy, which concerns not only the insurer and the insured but also the named beneficiary," it needed to analyze the statute's impact on two different groups in regards to the retrospectivity. *Id.* The court first "consider[ed] [the statute's] impact on the named beneficiaries and determine[d] that it [wa]s not retrospective." *Id.* The court next "consider[ed] [the statute]'s impact on the decedents and determine that it [also] [wa]s not retrospective." *Id.*

The court recognized, "Absent legislative intent to the contrary, a statute is presumed to operate prospectively, meaning it operates on transactions occurring after its effective date. A statute is retroactive if it operates on transactions that have already occurred or on rights and obligations that existed before its effective date." *Id.* at 854 (citations omitted). The court noted that while "[r]etroactive application of statutes is generally disfavored by both common law and statute," it "is not necessarily unconstitutional; it is permitted where the statute effects a change that is procedural or remedial." *Id.* The court further observed that "[b]ecause some retroactively applied legislation is constitutional while some is not, Colorado courts have marked this distinction by evoking the term contained in the constitutional provision—'retrospective'—to describe a statute whose retroactive application is unconstitutional."[15] *Id.*

---

[15] South Carolina does not distinguish between the terms retroactive and retrospective. Additionally, Black's Law Dictionary does not distinguish between the two terms. *See* RETROACTIVE, Black's Law Dictionary (11th ed. 2019) (defining retroactive as "extending in scope or effect to matters that have occurred in the past.—Also termed *retrospective*."). However, despite Colorado's particular

The *DeWitt* court determined that for the facts in the cases before it, the application of the statute was "retroactive because it w[ould] operate on a transaction that occurred before the effective date of the statute, namely the designation of a beneficiary to a life insurance policy by the decedent." *Id.* at 855. Thus, it needed to examine "whether [the statute] is retrospective," which required it to "consider the different interests that are implicated by the life insurance policies at issue." *Id.* The court recognized, "There are three sets of interests implicated by life insurance policies, namely the interests of the insurer, the insured-decedent, and the named beneficiary." *Id.* The court noted that because the argument being made in the cases before it was that the statute was "retrospective as to the beneficiaries and as to the insured-decedents," its retrospectivity inquiry would "consider[] [the statute]'s impact on both the named beneficiaries and the decedents, an analytical framework that has been utilized by other courts considering this issue." *Id.* The court explained, "A finding of retrospectivity with regard to either of these interests will render the statute unconstitutionally retrospective for all purposes." *Id.* at 855-856.

The court further reiterated that its "first inquiry in a retrospectivity analysis is whether the general assembly intended retroactivity" and explained that to "discern[] the general assembly's intent, [it] look[ed] to the statutory section in question." *Id.* at 856. The court determined "the general assembly expressed its intent that the statute applies when a decedent died on or after July 1, 1995," with the following statutory language: "Except as provided elsewhere in this code and except as provided otherwise in this section, parts 1 to 9 of article 11, as reenacted effective July 1, 1995, *shall apply to the estates, wills, or governing instruments of decedents dying on or after July 1, 1995.*" *Id.* (emphasis added by court) (quoting Colo. Rev. Stat. § 15-17-102(1) (2001)).

The court determined "the plain language . . . indicates the general assembly's intent that the *death* of an insured-decedent on or after July 1, 1995, triggers application of the statute." *Id.* The court found the fact "that the insurance contract may have been entered into, and the divorce may have occurred, before the effective date of the statute" did not make any difference; "the statute will be retroactive under such circumstances." *Id.* The court accordingly held "the general assembly intended [the statute] to operate retroactively." *Id.*

---

use of retrospectivity to only describe the unconstitutional application for retroactive applications, its reasoning is still persuasive.

The court noted that "a beneficiary to a life insurance contract does not possess a vested interest in that contract" but "merely possesses an expectancy, or contingent, interest." *Id.* The court therefore concluded "retroactive application of [the statute] does not impair a vested right of the named beneficiaries, which in turn mandates our conclusion that it is not retrospective under the 'vested right' prong of the retrospectivity inquiry." *Id.* The court recognized that although "the retroactive application of the statute would result in a named beneficiary not being able to collect the proceeds, the nature of the named beneficiary's interest was a mere expectancy." *Id.* at 857. Accordingly, the court noted it had previously "held that [the beneficiary's] interest may be defeated 'in the manner prescribed in the policy . . . or by statute.'" *Id.* (omission by court) (quoting *Johnson v. N.Y. Life Ins. Co.*, 138 P. 414, 416 (Colo. 1913)). The court found that although in the present case "the statute acts to defeat [the beneficiary's] expectancy interest in the proceeds, it cannot be reasoned that [the beneficiary's] inability to receive such proceeds unconstitutionally imposes a new disability." *Id.* The court noted that it had "long recognized that the general assembly may regulate the insurance industry" and determined that "[i]n this case, [in which] the general assembly acted to regulate the insurance contract in order to give effect to the presumptive intent of the insured-decedents, [the court] decline[d] to conclude that such regulation imposed a 'disability' of constitutional magnitude upon the named beneficiaries with a mere expectancy interest." *Id.*

The court further held that applying "the statute imposes neither a new duty nor a new obligation upon the named beneficiaries: Any duty or obligation pursuant to the statute would be upon the decedent, as the insured, to follow the statutorily mandated procedure for ensuring that his former spouse remained the beneficiary to the policy." *Id.* The court accordingly determined "the retroactive application of [the statute] is not retrospective with regard to the beneficiaries' interests." *Id.* The court found that even though "the statute created new requirements in order for the decedents to maintain their designations of beneficiary . . . the imposition of those new requirements [was not] retrospective." *Id.*

The court reiterated "the retroactive application of a statute is not [unconstitutional] whe[n] it effects a change that is procedural or remedial as opposed to substantive" and stated it "consider[ed] [the statute] to be procedural because it relates only to a mode of procedure to enforce the right of each decedent to designate a beneficiary." *Id.* The court held the statute causes "the automatic revocation of a beneficiary designation of a former spouse upon divorce," as a matter of procedure, but "also provides for additional procedures through which the insured may preserve the designation of his former spouse as a beneficiary,"

i.e., "divorcing parties may add an express provision to the insurance contract, or specify in a separation agreement, or obtain a court order, stating that [the statute] does not act to automatically revoke a spouse's designation as beneficiary." *Id.* The court further noted its jurisprudence regarding retrospectivity "requires that any new obligation, duty, or impairment that is asserted on behalf of the decedents be balanced against the public interest and statutory objectives of [the statute]. The statute at issue must be reasonably related to the asserted public interest and statutory objectives." *Id.* (citation omitted).

The court noted the statute results in "a change in beneficiary of an insurance policy." *Id.* The court found that because "[b]oth the insurance industry and the probate process is highly regulated by statute in" the state, "the decedents in these cases could reasonably expect that their life insurance policies would be regulated by statute, including the possibility of a statute addressing procedural changes in beneficiary designation." *Id.* at 857-58. Further, the court determined "the public interest and statutory objectives of (1) giving finality to divorce disputes; and (2) recognizing that the presumptive intent of a divorced spouse is to revoke the designation of his former spouse as a beneficiary are rationally related to the procedures and effect of [the statute]." *Id.* at 858. The court therefore held "that the application of [the statute] to the decedents in these cases is not unconstitutionally retrospective." *Id.*

The Tenth Circuit Court of Appeals has addressed the application of a revocation-upon-divorce statute in relation to annuity contracts. *Stillman v. Tchrs. Ins. & Annuity Ass'n Coll. Ret. Equities Fund*, 343 F.3d 1311 (10th Cir. 2003). After acknowledging "[c]ourts generally construe statutes to avoid retroactive application," the court noted, "The principal difficulty in applying the nonretroactivity presumption is in determining what constitutes retroactivity in a particular context." *Id.* at 1315. The court provided that to determine if a statute is being applied retroactively, a court must compare "the date the statute went into effect and . . . the date of the activity to which the statute applies." *Id.* The court indicated the effective date is generally not an issue; the issue is more often "about what activity is targeted by the statute." *Id.* The court observed, "No one has succeeded in formulating a test for retroactivity that performs well in all contexts." *Id.* (citing *Landgraf v. USI Film Prods.*, 511 U.S. 244, 270 (1994) ("Any test of retroactivity will leave room for disagreement in hard cases, and is unlikely to classify the enormous variety of legal changes with perfect philosophical clarity.")). The court recognized the "various formulations" did "reflect a common core concern—fairness." *Id.*

In the *Stillman* case, the retroactivity issue concerned if a revocation-upon-divorce provision enacted in 1998 could revoke a spouse's designation as beneficiary "when both the conduct giving rise to the designation (the purchase of the annuity contracts . . .) and the conduct giving rise to its potential revocation (the . . . divorce) occurred many years before the" law went into effect "but the event that vested the parties' rights ([the] death) postdated the enactment." *Id.* at 1316. The court in that case found the husband "had the right to change beneficiaries at any time during his lifetime." *Id.* at 1318. The court noted "[t]he purpose of the [Utah Uniform Probate Code] was to effectuate his intent at the time of his death." *Id.* The court held that "presuming . . . his desires (if he had stopped to consider them) regarding the beneficiaries changed when he was divorced" was not unfair. *Id.* The court recognized, "it is theoretically possible that [the husband] wished to maintain [the ex-wife] as his beneficiary and that his reason for not making this desire explicit is that he was relying on the pre-1998 presumption in Utah law that his pre-divorce designation would continue after the divorce." *Id.* However, the court found "as long as [it was] considering theoretical possibilities, one who was familiar with pre-1998 case law is likely also to know of the 1998 statute, and [the husband] had sufficient time to adjust to the statutory reversal of presumptions" and noted that the husband had "met with a lawyer and prepared a new will— excluding not only [the ex-wife] but also his children by her—after enactment of the 1998 amendments." *Id.*

The Supreme Judicial Court of Massachusetts has very recently looked at the application of that state's revocation-upon-divorce statute. *Am. Fam. Life Assurance Co. of Columbus v. Parker*, 178 N.E.3d 859 (Mass. 2022). The court acknowledged that its "retroactivity analysis must also address the purpose and effect of [the act], which states that 'any rule of construction or presumption provided in this act applies to governing instruments executed before the effective date unless there is a clear indication of contrary intent.'" *Id.* at 865 (quoting 2008 Mass. Acts 1754, 1914, c. 521, § 43(5)). The court noted, "This provision, on its face, appears to be directed at the various provisions in the act that are expressly defined as rules of construction or presumptions with language indicating that they apply absent a clear indication of contrary intent." *Id.* The court stated that because the act "seems just to make clear that these provisions apply retroactively the same way they apply prospectively," "the combination of [subsections] (1) and (5) [of the act] render the entire act retroactive." *Id.* at 865-66.

The court concluded that "[b]ased on the language and purpose of [the statute]," "the Legislature intended for [the statute] to be retroactive and it did so pursuant to [subsection] (1)" of the act. *Id.* at 866. The court further determined subsection

(5) of the act "is limited to those sections expressly defined as rules of construction or presumptions applicable absent contrary intent and thus does not apply to [the statute], which is not described as a rule of construction or presumption and does not employ the open-ended absence of contrary intent formulation." *Id.* The court noted that instead the statute "includes its own more specific rules of application and exception, thereby displacing a generalized contrary intent inquiry." *Id.*

The court recognized that in some other situations, in order to provide for the retroactive application of the statute, some courts and commentators have interpreted the statute as a rule of construction. *Id.* The court provided the *Stillman* case as an example of that but distinguished *Stillman* finding, "Utah's Uniform Probate Code differed from the Massachusetts Uniform Probate Code in that [Utah's] equivalent of [subsection] (1) [of the act] was limited to 'wills.'" *Id.* The court noted "[t]he only retroactivity provisions applicable to other instruments in Utah were provisions related to rules of construction. In this context, where [the statute] would not otherwise be retroactive, the Tenth Circuit interpreted [the statute] as a rule of construction." *Id.* (citation omitted). The court also looked at a statement the chief reporter for the Uniform Probate Code editorial board made "in defending the constitutionality of the retroactive application of the Uniform Probate Code prior to the Supreme Court's decision in *Sveen*": Waggoner stated that the statute "'merely establishes a rule of construction designed to implement intention. It reflects a legislative judgment that when the insured leaves unaltered a will, trust, or insurance-beneficiary designation in favor of an ex-spouse, the insured's failure to designate substitute takers more likely than not represents inattention rather than intention.'" *Id.* (quoting Lawrence Waggoner, *Spousal Rights in Our Multiple-Marriage Society: The Revised Uniform Probate Code*, 26 Real Prop. Prob. & Tr. J. 683, 700 (1992)). The court provided Waggoner further stated, "The legislative judgment yields to a contrary intention." *Id.* (quoting Waggoner, 26 Real Prop. Prob. & Tr. J. at 700).

The court found even though it did find those interpretations "instructive on the importance of applying [the statute] retroactively, [it] decline[d] to adopt such an expansive and unnecessary interpretation of rules of construction and presumptions in the context of [subsections] (1) and (5) of the . . . act, [and decided to] rely[] instead on the plain language of [the] statute." *Id.* The court determined subsection "(1) clearly encompasses [the statute], rendering it fully retroactive. [Subsection] (5), on its face, applies only to those rules of construction and presumptions so entitled." *Id.* The court found that if subsection "(5) were applicable to [the statute], it would also limit and not expand the retroactive effect of [the statute], which cuts against the thrust of the Tenth Circuit and Waggoner

interpretations." *Id.* The court "conclude[d] that [the statute] is to be applied retroactively, pursuant to [subsection] (1), according to the terms of both provisions." *Id.*

The court found in the case before it, "[u]nless one of the statute's express exceptions applie[d], the beneficiary designation to . . . the divorced spouse[] would be revoked as a matter of law." *Id.* The court noted one of those exceptions would be a "disposition made by a divorced individual to a former spouse . . . if 'provided by the express terms of a governing instrument, a court order, or a contract relating to the division of the marital estate made between the divorced individuals before or after the marriage, divorce, or annulment.'" *Id.* at 866-67 (footnote omitted) (quoting Mass. Gen. Laws ch. 190B, § 2-804(b) (West, Westlaw through Ch. 125 of the 2022 2nd Ann. Sess.)). Additionally, the court noted because the statute "only applies to governing instruments 'executed by the divorced individual <u>before</u> the divorce or annulment,'" "another method of avoiding application of [the statute] is redesignating the ex-spouse as beneficiary <u>after</u> the divorce; [the statute] does not apply to such 'beneficiary designations.'" *Id.* at 867 (emphases added by court) (first quoting Mass. Gen. Laws ch. 190B, § 2-804(a)(4) (West, Westlaw through Ch. 125 of the 2022 2nd Ann. Sess.); and then quoting Mass. Gen. Laws ch. 190B, § 1-201(4) (West, Westlaw through Ch. 125 of the 2022 2nd Ann. Sess.)).

The Montana Supreme Court has addressed whether that state's revocation-upon-divorce statute "appl[ied] to a life insurance policy owner's designation of his spouse as the beneficiary, where the parties were later divorced prior to enactment of [the statute] and the policyholder died after enactment of the statute." *Thrivent Fin. for Lutherans v. Andronescu*, 300 P.3d 117, 118 (Mont. 2013) (italics omitted). The court found the statute applied in that situation because the statute "operates at the time of the insured's death and applies to any divorce that took place during the insured's lifetime." *Id.*

The Montana court noted, "Montana adopted the revocation-upon-divorce statute from the Uniform Probate Code . . . in order to 'unify the law of probate and nonprobate transfers.'" *Id.* at 119 (quoting Tit. 72, ch. 2, Mont. Code Ann., *Annotations*, Official Comments at 635 (2012)). The court stated, "The Comments indicate that the revocation statute operates at the time the 'governing instrument is given effect' and the provision to the former spouse is to be treated 'as if the divorced individual's former spouse (and relatives of the former spouse) disclaimed the revoked provisions[.]'" *Id.* (alteration by court) (quoting Tit. 72, ch. 2, Mont. Code Ann., *Annotations*, Official Comments at 636 (2012)).

The court indicated "[t]he Comments reference two law review articles that provide '[t]he theory of this section'" and "discuss the history and purpose of revocation-upon-divorce statutes and confirm that, under those statutes, life insurance is to be treated in the same manner as a will." *Id.* (citing Tit. 72, ch. 2, Mont. Code Ann., *Annotations*, Official Comments at 636 (2012) (citing Lawrence W. Waggoner, *The Multiple-Marriage Society and Spousal Rights Under the Revised Uniform Probate Code*, 76 Iowa L. Rev. 223 (1991), and Langbein, 97 Harv. L. Rev. at 223-72)). The court noted that Langbein had explained "life insurance is functionally indistinguishable from a will, for it satisfies the twin elements of the definition of a will." *Id.* (quoting Langbein, 97 Harv. L. Rev. at 1110). The court observed Langbein further stated, "We say that a will is revocable until the death of the testator and that the interests of the devisees are ambulatory—that is, *nonexistent until the testator's death*. Unless specially restricted by contract, the life insurance beneficiary designation operates identically." *Id.* (emphasis added by court) (quoting Langbein, 97 Harv. L. Rev. at 1110). The court found, "This commentary is consistent with the interpretation of other jurisdictions that apply the revocation-upon-divorce statute as a rule of construction at the time the governing instrument is given effect." *Id.* Additionally, the court noted that although the law in some of those other jurisdictions include the Uniform Probate Code's "'rule of construction' statute expressly providing that the law applies to governing instruments executed before its effective date" and "Montana's code lacked the express statutory provision, the Official Comments [to the Montana code] nonetheless suggest that the statute operates at the time the instrument is given effect—i.e., upon death." *Id.* at 119 n.2.

The court further provided, "A statute is retroactive if it 'takes away or impairs vested rights, acquired under existing laws, or creates a new obligation, imposes a new duty or attaches a new disability, in respect to transactions already past.'" *Id.* at 119-20 (quoting *Allen v. Atl. Richfield Co.*, 124 P.3d 132, 135 (Mont. 2005)). However, the court explained, "A statute is not given retroactive effect 'merely because it is applied in a case arising from conduct antedating the statute's enactment.'" *Id.* at 120 (quoting *Porter v. Galarneau*, 911 P.2d 1143, 1148 (Mont. 1996)). The court found that "[b]ecause [the statute] operates at the time of the transferor's death, the statute is not given retroactive effect when applied to a divorce predating its enactment." *Id.* The court determined that in that case "[p]rior to [the husband's] death, [the wife] had no vested rights in the proceeds of his insurance policy. Instead, her property interest was equivalent to that of a devisee under a will—'ambulatory' and 'nonexistent.'" *Id.* (citation omitted)

(quoting Langbein, 97 Harv. L. Rev. at 1110).  The court held "[t]he operation of the revocation-upon-divorce statute therefore does not 'impair [ ] vested rights' and did not result in a different legal effect from that which the transaction had under the law at the time it occurred"—"[t]he designation of [the wife] as beneficiary had no legal effect before the date of [the husband]'s death."  *Id.* (second alteration by court) (quoting *Porter*, 911 P.2d at 1148-49).

In a South Dakota case, an ex-spouse contended that applying the revocation-upon-divorce statute in that case "violate[d] the fundamental rule of statutory construction that statutes are to only have prospective effect unless a retroactive effect is clearly intended."  *Buchholz v. Storsve*, 740 N.W.2d 107, 111 (S.D. 2007).  However, the court found the legislature had made "clear that it intended [the Uniform Probate Code] rules of construction . . .  to apply retroactively," when the code stated that it took "'effect on July 1, 1995'" and "'except as provided elsewhere in [the] code,'" it "'applie[d] to governing instruments executed by decedents dying on or after July 1, 1995, no matter when executed,'" and "'*[a]ny rule of construction or presumption provided in this code applies to governing instruments executed before July 1, 1995, unless there is a clear indication of a contrary intent*.'"  *Id.* (emphasis added by court) (quoting S.D. Codified Laws § 29A-8-101(a), (b)(2) (West, Westlaw through laws of the 2022 Reg. Sess. and Sup. Ct. Rule 22-10)).  The court noted the deceased spouse who executed the governing instrument—in that case a retirement account—had died eleven years after the date of enactment of the code.  *Id.*  The court determined the revocation statute "applie[d] to the governing instrument[,] provided it is considered a 'rule of construction.'"  *Id.*  The court, relying on *Stillman*, stated that because "the revocation-upon-divorce statute attempts to effectuate the intention of the donor, it is a rule of construction."  *Id.* (citing *Stillman*, 343 F.3d at 1317).

In the present case, we find the South Carolina version of the revocation-upon-divorce statute, section 62-2-507, applies and revokes William's designation of Bursed as the beneficiary of the Policy, despite the fact that their divorce occurred before the enactment of the amendment to the statute.  Based on our reading of the South Carolina statute, which is supported by other states' reading of their versions of the statute, because William's death occurred after the date the amendment took effect, the statute applies and revokes the designation.  Further, Burnsed had no vested interest in the policy until such time as William died.  *See Davis*, 249 S.C. at 199, 153 S.E.2d at 401 (recognizing that during the lifetime of an insured, a named beneficiary has no vested right in a life insurance contract, but merely an expectancy, when the insured reserves the right to change the beneficiary in the policy).  Accordingly, section 62-2-507 applies here to revoke William's

designation of Burnsed as beneficiary to his life insurance policy.  Therefore, the circuit court's grant of summary judgment to Burnsed is

**REVERSED.**

**WILLIAMS, C.J., and VINSON, J., concur.**